FILED
United States Court of Appeals
Tenth Circuit

April 15, 2015

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

DARRELL L. HAVENS,

      Plaintiff - Appellant,

v.

WILLIAM JOHNSON,

      Defendant - Appellee.

No. 14-1118

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
(D.C. No. 1:09-CV-01380-MSK-MEH)

---

Edward LaBarre, Sausalito, California, (Kim Welch, William Muhr, LLP, Colorado Springs, Colorado, with him on the briefs), for Plaintiff - Appellant.

David R. DeMuro, Vaughan & DeMuro, Denver, Colorado, (Shelby A. Felton, Vaughan & DeMuro, Denver, Colorado, Christopher K. Daly, City Attorney, Roberto Ramirez, Senior Assistant City Attorney, City of Arvada, Arvada, Colorado, with him on the brief), for Defendant - Appellee.

---

Before **HARTZ**, **MATHESON**, and **MORITZ**, Circuit Judges.

---

**HARTZ,** Circuit Judge.

Plaintiff Darrell Havens pleaded guilty in Colorado state court to attempted assault of Detective William Johnson. He then brought suit in federal district court under 42 U.S.C. § 1983, alleging that Johnson used excessive force in violation of the Fourth Amendment. The district court granted Johnson's motion for summary judgment, ruling that Havens failed to establish a prima facie case of excessive force and that Johnson was entitled to qualified immunity. We exercise jurisdiction under 28 U.S.C. § 1291 and affirm on the alternative ground that Havens's claim is barred under the Supreme Court decision of *Heck v. Humphrey*, 512 U.S. 477 (1994), because he has not explained how Johnson used excessive force in a way that would still be consistent with the basis of his attempted-assault conviction.

## I.    BACKGROUND

In January 2007 the Denver Metro Auto Theft Team Task Force planned a sting operation to arrest Havens, who had arranged to deliver a stolen Audi to an informant in exchange for money and drugs. Johnson was involved in planning the operation. He had received information from another officer, the informant, and police records that Havens had outstanding warrants for robbery and weapon possession, had previously fled from law-enforcement officers, and had associates known to carry weapons.

In the evening of January 3, Havens drove the Audi to the back of a Target store to meet the informant as agreed. L-shaped walls on the back (the west side) of the building formed an alcove that was open on the north and west. A perimeter road ran along the west and north sides of the building.



Satellite image of Target store. Imagery and map data © 2015 Google, Digital-Globe, U.S. Geological Survey. Text and arrows in red added by the Court.

The pavement in the alcove was icy and slick. Officers had arranged for a number of vehicles to trap Havens in the alcove so he could be apprehended. A blue Chevy Blazer, posing as the buyer's car, was parked near the east wall of the alcove facing west; it was occupied by Detective C.J. Bickmore and Officer Billy Mayfield. Havens drove into the alcove and stopped the Audi facing the passenger side of the Blazer, roughly 6 to 15 feet away.

Several police vehicles then entered the alcove. Officer Kelly Pickering drove a blue pickup, stopping it with the front-left-corner bumper within inches of, or possibly touching, the rear of the Audi; and Officer Ricardo Hernandez drove a black GMC

3

Yukon that he parked between the east alcove wall and the blue pickup. Shortly thereafter, Officer Brian Sandy entered the alcove in a white pickup with its police lights activated. Defendant Johnson was in the passenger seat. Following the white pickup was a Jeep Liberty driven by Sergeant Scott Beauvais.

Once the Audi was blocked between the Blazer and the blue pickup, it began ramming the Blazer in front of it and the blue pickup behind it.[1] Sandy drove his white pickup into the passenger side of the Audi and pushed it sideways toward a snowbank against the east wall of the alcove. The Audi stopped moving and Johnson stepped out of the passenger side of the white pickup with a Taser in his hand, planning to arrest Havens. Sandy also exited the pickup and broke the front passenger window of the Audi with a wrench. The Audi then maneuvered to push the pickup backwards, pivoting on the right front bumper of the truck, and continuing to move down the truck's passenger side. Johnson was in front of the Audi wearing a police badge and a jacket that said "Police" in reflective material. He drew his gun, ordering Havens to stop and put the car in park. Meanwhile, Beauvais had driven the Jeep Liberty behind Johnson. Johnson fired nine times, hitting Havens three times and rendering him a quadriplegic.

The critical factual issue is what was going on when Johnson fired at Havens. Havens's recollection of the shooting is limited. He testified at his deposition that when

---

[1] Unlike the other officers present, Officer Hernandez testified at his deposition that he did not see the Audi hit any vehicles. But he was focused on blocking the exit to contain the Audi and he could not see well beyond his high-profile truck.

he arrived in the alcove and pulled the Audi perpendicular to the Blazer, he suddenly flew forward and then backward in his seat. He glanced in the rearview mirror and saw the front grille of a vehicle with no lights on, and then flew forward again. After the Audi was hit the first time, he did not have control of the car and did not make any maneuvers. Next he felt as if someone had hit him in the chest, taking his breath away; all his limbs went numb and he fell against the car door. He could not estimate the time between the Audi being hit and the gunshots, but these events were "pretty much instantaneous" to him. Aplt. App., Vol. 1 at 180. Havens testified that he did not see any vehicles (presumably other than the Blazer and the one whose grille he saw in his rearview mirror) or any police lights and he did not see any police officers until after he was shot. He also said that he did not see the shooter and he did not know what direction the Audi was facing when he was shot.[2]

The statements of officers other than Johnson indicated that the Audi was moving toward Johnson when he fired the shots. Sandy testified that the Audi was accelerating and its engine was revving as it moved along the side of his pickup. He was standing behind the hood of his truck and could not see Johnson on the other side, but he heard the shots and saw the muzzle flashes. The Audi was moving when Sandy heard the shots. In

---

[2] Havens said that this testimony was based on his independent recollection, but that some of his earlier statements, such as those regarding the positioning of vehicles, were based on police reports he read and pictures he saw after the incident. For example, he asserted that after the Audi was hit by the white pickup it was not moving because it was wedged into the fender well of the pickup; but he did not dispute that this assertion was based on his interpretation of the police reports and not on his memory.

a statement to investigators on the day of the incident, Mayfield said that the car was accelerating toward Johnson when he fired. Bickmore testified that the Audi was moving toward Johnson and he thought he was going to see Johnson get crushed. Pickering stated in an affidavit that he heard gunshots as the Audi lurched forward. Sergeant Eric Strausheim, who drove into the alcove in a Dodge Intrepid while Johnson was firing the shots, testified that he saw the Audi rolling forward toward Johnson, and possibly touching Johnson's legs, as Johnson tried to back up. He said that Johnson was bent over at the waist toward the vehicle. Sergeant Link Strate, a passenger in the Intrepid, testified that as they turned into the alcove he saw Johnson standing in front of the Audi, saw the muzzle flashes from the gun, and saw the Audi lurching and spinning its tires. He said that Johnson was within inches of the Audi. Strate yelled for Strausheim to ram the Audi, which Strausheim did, using the Intrepid to hit the driver's side of the Audi and pin it against Sandy's pickup. The Audi's engine continued to rev and the car was still moving. One of the police officers smashed a window of the Audi and turned off the engine.

As for Defendant Johnson's version, he testified at his deposition that while the Audi accelerated down the side of Sandy's pickup, he backpedaled, Havens turned the steering wheel, and the Audi struck him. Thinking he was about to be crushed by the Audi, he fired his gun nine times into the windshield to stop Havens. After he fired the shots the Audi was temporarily pinned by the Intrepid; but its engine was revving and it started coming at him again. He pulled out a new magazine, dropped it, picked it up, reloaded, and got back into position to fire again if needed. No more shots were fired.

Johnson at first testified that when he fired he was bent over the hood of the Audi, holding himself up with his left hand, and the Audi was pushing him backwards. Later in his deposition, however, he was asked whether the Audi was moving toward him and he replied, "Not at the time that I shot him." *Id.* at 215. After reviewing the deposition transcript, Johnson filed an amendment to this testimony, stating that the car was still moving toward him and he was bent over the hood of the vehicle when he shot.[3]

In Johnson's initial statement to investigators a few hours after the incident, he had said that as he was backing up and the Audi was heading at him, he opened fire to stop Havens. He did not say, however, that the Audi hit him. Rather, he stated that the Audi was less than five feet from him when he shot. Johnson explained at his deposition that he saw his handprint on the Audi the day after the incident and remembered that he had

---

[3] The district court's summary-judgment opinion does not mention Johnson's testimony that the car was not moving at the time he shot Havens, nor does it mention the amendment. It appears that consideration of the amendment would have been improper. *See Burns v. Bd. of Cnty. Comm'rs*, 330 F.3d 1275, 1282 (10th Cir. 2003) (district court correctly disregarded plaintiff's deposition corrections on summary judgment because (1) plaintiff was cross-examined at his deposition; (2) plaintiff's "corrections were not based on any newly discovered evidence"; and (3) plaintiff's "answers to the direct questions posed by counsel [did] not reflect any obvious confusion—as opposed to indecisiveness or inconsistency—that the corrections would need to clarify"); *Garcia v. Pueblo Country Club*, 299 F.3d 1233, 1242 n.5 (10th Cir. 2002) (rejecting defendant's reliance on changes to deposition testimony: "We do not condone counsel's allowing for material changes to deposition testimony and certainly do not approve of the use of such altered testimony that is controverted by the original testimony. . . . [The rules of procedure do not] allow one to alter what was said under oath. If that were the case, one could merely answer the questions with no thought at all then return home and plan artful responses. Depositions differ from interrogatories in that regard. A deposition is not a take home examination." (internal quotation marks omitted)).

been hit.  Criminalist Suzanne Kurth testified that when she spoke with Johnson shortly after the incident he told her that he was moving around, looking for an escape route, while shooting and he did not say that he was hit by the Audi.  Officer Bickmore testified that he believed Johnson touched the vehicle at one point but he did not remember Johnson's being on top of the hood.

After this incident the State of Colorado charged Havens with multiple offenses.  In October 2008 he pleaded guilty to attempted first-degree assault of Johnson (among other things).  At the plea hearing the court asked for a factual basis for the plea.  The attorneys agreed that the factual basis for the assault count and another count was contained in the affidavit for Havens's arrest, and that Havens was waiving a factual basis for the other two counts.  The court, however, insisted on a record that Havens acknowledged committing the crimes and was pleading guilty to them.  His attorney stated, "[T]he attempted assault is from the police officer being in front of [Havens's] car as that car, according to the [police] report, was being—was stuck on the ice and the motor was being revved up, apparently, in an effort to get away."  *Id.* at 282.  The court asked Havens whether this was what happened and his lawyer replied that Havens had no memory of the incident because of the serious injuries he suffered that night.  The court then asked Havens if he nonetheless understood that was what he was pleading guilty to, and he said yes.  Based on his plea, the court sentenced Havens to 20 years' imprisonment.  Havens did not file a direct appeal but filed a motion in state court for postconviction relief alleging, in part, that his plea was not knowing, voluntary, or

intelligent and that newly discovered evidence warranted a new trial. The state trial court denied the motion and the Colorado Court of Appeals affirmed. The Colorado Supreme Court denied a petition for a writ of certiorari.

Havens brought an excessive-force claim under 42 U.S.C. § 1983 against Johnson in the United States District Court for the District of Colorado.[4] The complaint denied any wrongdoing by Havens. It said that he at no time attempted to resist arrest, claiming that the officers, by crashing their cars into the Audi, caused Havens "to lose control of the vehicle which resulted in the vehicle lurching forward under its own volition." *Id.* at 106. And it asserted that the criminal prosecution was bogus:

> [I]n an attempt to cover up their own wrongful, willful, unreasonable, and unlawful conduct, and to prevent [Havens] from bringing a legal action against the said law enforcement officers who participated in the botched sting operation, the Defendant law enforcement officers . . . made false statements and falsified evidence and conspired together to wrongfully accuse [Havens] of attempting to run an officer down with the vehicle he was driving, which accusations the officers knew were false at the time they made them.

Aplt. App., Vol. 1 at 100–01. He further asserted that his guilty plea was not knowing, voluntary, or intelligent.

The district court granted Johnson's motion for summary judgment, holding that Havens had failed to establish a prima facie case of excessive force and that Johnson was entitled to qualified immunity. Johnson had argued in the alternative that Havens's guilty

---

[4] Havens also sued other officers and their employers. But all those claims were dismissed below and Havens has not appealed the dismissals.

plea supported summary judgment under the doctrines of issue preclusion, judicial estoppel, and *Heck*; but the district court rejected those alternative grounds.

## II.    DISCUSSION

Section 1983 "allows an injured person to seek damages against an individual who has violated his or her federal rights while acting under color of state law." *Estate of Booker v. Gomez*, 745 F.3d 405, 411 (10th Cir. 2014) (internal quotation marks omitted). "We treat excessive force claims as seizures subject to the reasonableness requirement of the Fourth Amendment." *Estate of Larsen ex rel. Sturdivan v. Murr*, 511 F.3d 1255, 1259 (10th Cir. 2008). Accordingly, "[t]o establish a constitutional violation, the plaintiff must demonstrate the force used was objectively unreasonable." *Id.* In assessing objective reasonableness, we evaluate whether the totality of the circumstances justified the use of force. *See id.* at 1260. Further, the "reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* at 1259 (internal quotation marks omitted). The use of deadly force is justified "if a reasonable officer in [the defendant's] position would have had probable cause to believe that there was a threat of serious physical harm to [himself] or to others." *Id.* at 1260 (emphasis and internal quotation marks omitted). "Thus, if threatened by [a] weapon (which may include a vehicle attempting to run over an officer), an officer may use deadly force." *Thomas v. Durastanti*, 607 F.3d 655, 664 (10th Cir. 2010).

Although the district court granted summary judgment on the ground that Havens failed to establish a factual basis for his excessive-force claim, we affirm on the ground that *Heck* requires judgment for Johnson. We recognize that the district court ruled against Johnson on his *Heck* defense, but there was no need for Johnson to cross-appeal on this issue because he is not seeking to enlarge his rights or lessen those of anyone else beyond what was resolved in the district-court judgment. *See Ute Distrib. Corp. v. Sec'y of Interior*, 584 F.3d 1275, 1282 (10th Cir. 2009). And we can properly rely on this ground to affirm because Johnson raised it below, the issue was fully briefed, and he raises it again on appeal. *See Elkins v. Comfort*, 392 F.3d 1159, 1162 (10th Cir. 2004).

## A. The *Heck* Doctrine

In *Heck,* 512 U.S. at 480–87, the Supreme Court held that a plaintiff could not bring a civil-rights claim for damages under § 1983 based on actions whose unlawfulness would render an existing criminal conviction invalid. The Court stated: "[W]hen a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." *Id.* at 487. On the other hand, "if the district court determines that the plaintiff's action, even if successful, will *not* demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed, in the absence of some other bar to the suit." *Id.* (footnotes omitted).

11

An excessive-force claim against an officer is not necessarily inconsistent with a conviction for assaulting the officer. For example, the claim may be that the officer used too much force to respond to the assault or that the officer used force after the need for force had disappeared. *See Thore v. Howe*, 466 F.3d 173, 180 (1st Cir. 2006); *Ballard v. Burton*, 444 F.3d 391, 400–01 (5th Cir. 2006); *McCann v. Neilsen*, 466 F.3d 619, 621 (7th Cir. 2006); *Smithart v. Towery*, 79 F.3d at 951, 952 (9th Cir. 1996); *Willingham v. Loughnan,* 261 F.3d 1178, 1183 (11th Cir. 2001), *vacated on other grounds,* 537 U.S. 801 (2002).

To determine the effect of *Heck* on an excessive-force claim, the court must compare the plaintiff's allegations to the offense he committed. Illustrative of this process is our decision in *Martinez v. City of Albuquerque*, 184 F.3d 1123 (10th Cir. 1999). The plaintiff had been convicted of resisting or evading an officer. *See id.* at 1126. He had fled in his vehicle when officers tried to arrest him for patronizing a prostitute. *See id.* at 1124. Shortly thereafter he stopped his vehicle, locked the doors, rolled down his window, and awaited the officers. *See id.* Upon their arrival he refused to leave the vehicle and rolled up the window on the arm of an officer who had reached in to unlock the door. *See id.* A second officer hit the plaintiff in the face and unlocked the door. *See id.* We noted that the plaintiff's excessive-force claim could survive *Heck* if his conviction had been based solely on his flight from the officers (as it appeared to be) or if his claim was that the officers used too much force to apprehend him. *See id.* at 1126–27. But the trial court would be required to instruct the jury that the plaintiff's

arrest was lawful, *see id.* at 1127, and we struck "the allegations in [the plaintiff's complaint] that (1) the police officers had no probable cause to arrest him and (2) he did not actively resist arrest or attempt to evade arrest, . . . because any such finding by the jury in this case would suggest the invalidity of [the plaintiff's] state court conviction for resisting arrest." *Id.*

Sometimes the excessive-force claim must be barred in its entirety because the theory of the claim is inconsistent with the prior conviction. That occurred in *DeLeon v. City of Corpus Christi*, 488 F.3d 649, 656 (5th Cir. 2007). The court adopted the following reasoning from a prior unpublished opinion:

> [The plaintiff's] claims are not that the police used excessive force after he stopped resisting arrest or even that the officers used excessive and unreasonable force to stop his resistance. Instead, [he] claims that he did nothing wrong, but was viciously attacked for no reason. He provides no alternative pleading or theory of recovery. . . . [The] suit squarely challenges the factual determination that underlies his conviction for resisting an officer. If [the plaintiff] prevails, he will have established that his criminal conviction lacks any basis.

*Id.* at 657 (internal quotation marks omitted); *see also, e.g.*, *Moore v. Mahone*, 652 F.3d 722, 725 (7th Cir. 2011) (pro se complaint's only basis for relief was that the plaintiff was the victim of an unprovoked assault, contrary to prison disciplinary board's findings); *Cunningham v. Gates*, 312 F.3d 1148, 1154 (9th Cir. 2003).

**B.    Application to This Case**

This case is like *DeLeon*. Havens pleaded guilty to attempted first-degree assault of Defendant Johnson. A person commits first-degree assault if "[w]ith intent to cause

13

serious bodily injury to another person, he causes serious bodily injury to any person by means of a deadly weapon." Colo. Rev. Stat. § 18-3-202. And a person commits *attempted* first-degree assault if "acting with the kind of culpability otherwise required for commission of" an assault (intent to cause serious bodily injury), "he engages in conduct constituting a substantial step toward the commission of" the assault. *Id.* § 18-2-101. In short, Havens pleaded guilty to intentionally taking a substantial step toward causing serious bodily injury to Johnson. At Havens's plea hearing his lawyer partially stated the factual basis for the plea: a police officer was in front of Havens's car and Havens was gunning the engine in an effort to get away.

Havens's plea is incompatible with his § 1983 claim. His complaint did not allege, and his opening brief does not argue, that Johnson used excessive force in response to an attempted assault by Havens. Rather, he contends that Johnson's use of force was unreasonable because Havens did not have control of the car, he did not try to escape, he never saw Johnson, he did not drive toward Johnson, and he was hit by police vehicles and shot almost instantly after arriving on the scene. In other words, he did nothing wrong and did not intend or attempt to injure Johnson. This version of events could not sustain the elements of attempted first-degree assault under Colorado law and the factual basis for Havens's plea. Havens does not present an alternative scenario

14

consistent with his attempted-assault conviction.[5]  Because Havens's only theory of relief

is based on his innocence, and this theory is barred by *Heck*, we affirm the district court's

grant of summary judgment to Johnson.

### C.     Effect of an *Alford* Plea

There is, however, one complication to confront.  Havens's plea was not a typical

guilty plea.  He did not admit committing the attempted assault, but only that he could be

convicted of it.  It is a type of guilty plea endorsed by the Supreme Court in *North*

*Carolina v. Alford*, 400 U.S. 25 (1970).  In that opinion the Court held that the trial judge

did not err in accepting the defendant's guilty plea in light of "the strong factual basis for

the plea demonstrated by the State and [the defendant's] clearly expressed desire to enter

it despite his professed belief in his innocence."  *Id.* at 38.  Noting that Supreme Court

precedent recognized a trial court's power to impose a prison sentence after accepting a

plea of *nolo contendere*, the Court did not think it constitutionally significant that the

defendant's plea was denominated a plea of guilty rather than a plea of *nolo contendere*,

---

[5] Havens's reply brief in this court states:  "Furthermore, the reckless and deliberate
conduct of Johnson and other officers at the scene unreasonably created Johnson's
perceived need to use force.  Their plan to trap Havens in a confined area and Johnson's
decision to alight from the safety of his vehicle and put himself in the middle of a chaotic
situation were reckless and deliberate.  Consequently, Johnson and the other officers'
reckless and deliberate conduct made the use of force unreasonable."  Aplt. Reply Br. at
4.  Even if we could read this single paragraph as an independent theory consistent with
Havens's attempted assault conviction (and could find support for the theory based on the
evidence and clearly established law), it comes too late and is waived.  *See Coleman v. B-
G Maint. Mgmt. of Colo., Inc.*, 108 F.3d 1199, 1205 (10th Cir. 1997) ("It is not sufficient
to merely mention an issue in a reply brief.  Issues not raised in the opening brief are
deemed abandoned or waived.").

*see id.* at 35–37, and stated that "an express admission of guilt . . . is not a constitutional requisite to the imposition of criminal penalty," *id.* at 37. Thus, an individual may plead guilty "even if he is unwilling or unable to admit his participation in the acts constituting the crime." *Id.*

Nevertheless, the *Heck* doctrine derives from the existence of a valid conviction, not the mechanism by which the conviction was obtained (such as admissions by the defendant), so it is irrelevant that Havens entered an *Alford* plea. *See Ballard*, 444 F.3d at 397 ("[W]e hold that a conviction based on an *Alford* plea can be used to impose *Heck*'s favorable termination rule."); *Smithart*, 79 F.3d at 952 (applying *Heck* to the plaintiff's *Alford* plea to assault with a deadly weapon); *Carbajal v. Hotsenpiller*, 524 F. App'x 425, 428 (10th Cir. 2013), *cert. denied*, 134 S. Ct. 2697 (2014) ("We agree with the district court that [the plaintiff's] abuse of process, false imprisonment, and conspiracy claims are barred by *Heck*. All three claims rest on [the plaintiff's] allegation that the charges for which he entered an Alford plea were false."); *Green v. Chvala*, 567 F. App'x 458, 459 (7th Cir. 2014) ("Like any plea, an *Alford* plea results in a conviction to which *Heck* applies.").[6]

---

[6] The author (not joined by the other members of the panel) notes, however, that the type of plea entered may well affect the other two defenses raised by Johnson: issue preclusion and judicial estoppel. I address preclusion first. "The Full Faith and Credit Act, 28 U.S.C. § 1738, requires a federal court to give the same preclusive effect to a state-court judgment that the judgment would be given in the courts of the state in which the judgment was rendered." *Jiron v. City of Lakewood*, 392 F.3d 410, 415–16 (10th Cir. 2004). Under Colorado law a guilty plea may have preclusive effect in a subsequent civil

Continued . . .

proceeding.  *See Allen v. Martin*, 203 P.3d 546, 560–65 (Colo. App. 2008); *Jiron*, 392 F.3d at 417.  But in dictum the Colorado Supreme Court has described *Alford* pleas as the equivalent of pleas of *nolo contendere*, *see People v. Darlington*, 105 P.3d 230, 233 (Colo. 2005) ("Nolo pleas may also be referred to as 'Alford' pleas."), while noting that under Colorado law a plea of *nolo contendere* does not have preclusive consequences, *see id.* ("The sole distinction we have made between a guilty plea and a plea of nolo contendere is that the latter gives the defendant the advantage of not being estopped from denying her fault in a civil action based upon the same facts.").  I recognize that a Colorado federal district court has said that a Colorado *Alford* plea has preclusive effect.  *See Cortese v. Black*, 838 F. Supp. 485, 492 (D. Colo. 1993).  And that appears to be the rule in a number of jurisdictions.  *See Blohm v. Comm'r*, 994 F.2d 1542, 1553–55 (11th Cir. 1993); *Graybill v. U.S. Postal Serv.*, 782 F.2d 1567, 1573 n.1 (Fed. Cir. 1986); *Empl'rs Mut. Cas. Co. v. Van Haaften*, 815 N.W.2d 17, 24 (Iowa 2012); *Zurcher v. Bilton,* 666 S.E.2d 224, 227 (S.C. 2008); *Troville v. State*, 953 So.2d 637, 640 (Fla. Dist. Ct. App. 2007).  But other courts have declined to give preclusive effect to *Alford* pleas.  *See*, *e.g.*, *Carroll v. Commonwealth,* 682 S.E.2d 92, 100 n.3 (Va. Ct. App. 2009); *Clark v. Baines*, 84 P.3d 245, 251 (Wash. 2004); *Fleck v. State Farm Ins. Cos.*, No. 89-L-14-070, 1990 WL 124648, at *2 (Ohio Ct. App. Aug. 24, 1990).  I would not be sufficiently confident of the preclusive effect of an *Alford* plea under Colorado law to apply issue preclusion here.

My concerns about the application of judicial estoppel have a similar origin to my concerns regarding issue preclusion.  Under the doctrine of judicial estoppel, "[w]here a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him." *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) (internal quotation marks omitted).  The doctrine "is based upon protecting the integrity of the judicial system by prohibiting parties from deliberately changing positions according to the exigencies of the moment." *Bradford v. Wiggins*, 516 F.3d 1189, 1194 (10th Cir. 2008) (internal quotation marks omitted).  In *Johnson v. Lindon City Corp.*, 405 F.3d 1065, 1067, 1069–70 (10th Cir. 2005), the court held that judicial estoppel barred the plaintiffs' unlawful-arrest claim under § 1983 because the plaintiffs had previously entered pleas in Utah court and executed statements in which they admitted that they had attempted to use unlawful force against the defendant police sergeant.  Then *Bradford* held that the plaintiffs were judicially estopped from pursuing their § 1983 claims of false arrest and baseless prosecution because they had previously entered no-contest pleas to disorderly-conduct charges.  *See* 516 F.3d at 1194–95.  But the court was reluctant to rely on the plea in itself and pointed to explicit admissions by the plaintiffs at their plea hearing:

Continued . . .

17

## III.  CONCLUSION

The judgment of the district court is AFFIRMED.

Judge Matheson joins in all but footnote 6 of the opinion.  Judge Moritz joins in all but Section II, C of the opinion.

---

> Applying judicial estoppel both narrowly and cautiously, as we must, we do not hold it to be dispositive that the [plaintiffs] simply entered a no contest plea.  Sometimes a civil action following a plea is justified, most commonly when a party's previous position was based on a mistake.  However, though the plea itself is not dispositive, we hold that the [plaintiffs'] plea and their plea hearing statements that they refused the officers' requests to leave are sufficient to justify judicial estoppel in this case.

*Id.* at 1194 n.3 (citations omitted).  It is not at all clear that *Bradford* would permit application of judicial estoppel when the defendant entering an *Alford* plea expressly refuses to acknowledge guilt.  And I note that the Fourth Circuit reversed the use of judicial estoppel in such a circumstance.  *See Zinkand v. Brown*, 478 F.3d 634, 635–36, 638 (4th Cir. 2007); *see also Wells v. Coker*, 707 F.3d 756, 761 n.2 (7th Cir. 2013) *cert. denied*, 134 S. Ct. 94 (2013) ("While some of our sister circuits have applied judicial estoppel to guilty pleas in specific instances following highly fact-dependent analyses, we do not believe that the facts concerning Wells's plea agreement and plea colloquy warrant the same treatment." (citations omitted)).  I therefore would be reluctant to rely on that doctrine to affirm the summary judgment.

18