**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**December 29, 2020**

**Christopher M. Wolpert**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

ANTONIO DEWAYNE HOOKS,

    Plaintiff - Appellant,

v.

KAYODE ATOKI; BETHANY POLICE
DEPARTMENT; OKLAHOMA COUNTY
JAIL; ARMOR CORRECTIONAL
HEALTH SERVICES INC; CHRIS
HARDING, Bethany Police Officer, in his
official and individual capacity; JAMES
IRBY, Bethany Police Officer, in his
official and individual capacity; JOHN
WHETSEL, Sheriff, in his official and
individual capacity; DR. JERRY CHILDS,
Oklahoma County Jail, Armor Correctional
Health Inc., in his official and individual
capacity,

    Defendants - Appellees.

No. 19-6093

_____

**Appeal from the United States District Court**
**for the Western District of Oklahoma**
**(D.C. No. 5:17-CV-00658-D)**
_____

Daniel S. Brookins (Gordon D. Todd with him on the briefs), Sidley Austin LLP,
Washington, DC, for the Plaintiff - Appellant.

Carson C. Smith (Robert S. Lafferrandre with him on the briefs), Pierce Couch
Hendrickson Baysinger & Green, L.L.P., Oklahoma City, Oklahoma, for named
Defendants – Appellees Chris Harding and James Irby, in their individual and official
capacities as Bethany Police Officers.

Austin J. Young (Sean P. Snider and Anthony C. Winter with him on the briefs), Johnson Hanan Vosler Hawthorne & Snider, Oklahoma City, Oklahoma, for Defendants – Appellees Armor Correctional Health Services, Inc. and Jerry Childs, Jr., D.O.

Rodney J. Heggy (Aaron Etherington with him on the briefs), Assistant District Attorneys, Oklahoma County District Attorney's Office, Oklahoma City, Oklahoma, for Appellees – Defendants Kayode Atoki and Sheriff John Whetsel.

Antonio DeWayne Hooks also filed pro se briefing on his own behalf.
_____

Before **HARTZ**, **EBEL**, and **McHUGH**, Circuit Judges.
_____

**McHUGH**, Circuit Judge.
_____

In this civil rights lawsuit, Antonio Dewayne Hooks alleges that Officers Chris Harding and James Irby of the Bethany, Oklahoma, Police Department used excessive force against him in the course of an arrest, and, separately, that Officer Kayode Atoki exhibited deliberate indifference by failing to intervene during a vicious, gang-related jailhouse assault.[1] The district court screened and dismissed Mr. Hooks's excessive force claim prior to discovery.[2] And after limited discovery, the district court granted Officer Atoki's motion for summary judgment on the deliberate indifference claim.

_____

[1] Because Mr. Hooks proceeded pro se in the district court, "we liberally construe his filings, but we will not act as his advocate." *James v. Wadas*, 724 F.3d 1312, 1315 (10th Cir. 2013).

[2] Mr. Hooks raised other claims that the district court screened and dismissed. Except where noted, those claims are not at issue in this appeal.

We affirm, in part and reverse, in part. Specifically, we reverse the district court's dismissal of Mr. Hooks's excessive force claim because some of his allegations are not barred by *Heck v. Humphrey*, 512 U.S. 477 (1994). We affirm the district court's grant of summary judgment to Officer Atoki on Mr. Hooks's deliberate indifference claim. We also take this opportunity to clarify that our recent discussion of the deliberate indifference standard in *Strain v. Regalado*, 977 F.3d 984 (10th Cir. 2020), applies outside the medical context.

## I. BACKGROUND

### A. *Factual History*

**1. Claims Dismissed Prior to Discovery**

"In determining whether a dismissal is proper, we must accept the allegations of the complaint as true and construe those allegations, and any reasonable inferences that might be drawn from them, in the light most favorable to the plaintiff." *Kay v. Bemis*, 500 F.3d 1214, 1217 (10th Cir. 2007) (quotation marks omitted).

a. *The arrest and resulting charges*

On September 30, 2016, Officer Harding approached a vehicle with his gun drawn and ordered Mr. Hooks to put his hands on the dash. Mr. Hooks complied, at which point Officer Harding opened the car door and removed Mr. Hooks. Officer Harding then attempted to maneuver Mr. Hooks to a police car, without explanation or the use of handcuffs. Mr. Hooks pulled away, as if to say, "[W]hat are you doing!" ROA, Vol. I at 1445. Officer Harding and Officer Irby then wrestled Mr. Hooks between two cars, at which point Officer Irby tased Mr. Hooks. Mr. Hooks dropped

3

to the ground, hit his head, landed on his stomach, and lay there, not moving. Officer Irby tased Mr. Hooks again. Then, Officer Harding placed Mr. Hooks in a chokehold.

In response to the altercation, on October 18, 2016, the Oklahoma County district attorney filed a criminal information charging Mr. Hooks with two counts of assault and battery upon a police officer, one count of possession with intent to distribute a controlled substance, and one count of possession of a controlled substance within 2,000 feet of a school or park. The two assault and battery counts were specifically based on Mr. Hooks "pushing and stricking (sic)" Officers Harding and Irby. Bethany App. at 35.

Mr. Hooks entered a plea of no contest on the two assault and battery counts, as well as a lesser-included count of simple drug possession. In exchange, the district attorney agreed to dismiss the drug distribution charge, as well as the charge of possession near a school or park. The court accepted Mr. Hooks's plea and sentenced him to concurrent four-year terms of imprisonment on each count.

b. *Booking and housing procedures*

When Mr. Hooks arrived at the county jail in the early morning hours of October 1, 2016, an unnamed guard fingerprinted him. The guard did not ask Mr. Hooks about his gang affiliations, in violation of jail policy. Typically, the jail houses rival gang members in different parts of the jail for safety reasons.

On October 5, 2016, a second unnamed guard moved Mr. Hooks from the 4D pod to the 4A pod. The 4A pod was reserved for members of the "bloods" gang.

4

Mr. Hooks was a member of the rival "crips" gang, as apparent from Mr. Hooks's tattoos. Jail officials were aware of Mr. Hooks's gang affiliation.

## 2. Claim Dismissed at Summary Judgment

After the transfer to the 4A pod, Mr. Hooks showered, walked around the pod, and got in line to order something from the canteen. Inmates place orders to the canteen system using computer screens on the wall in front of the pod guard office. The guards can see into the pod through the office window, and the pod is surveilled continuously by several video cameras.

Through the office window, Mr. Hooks could see Officer Atoki working at an office computer.[3] Then, someone knocked Mr. Hooks unconscious from behind. The video from 4A pod camera #2, from 9:42:07 to 9:42:14, shows three assailants kicking and stomping on Mr. Hooks in the bottom righthand corner of the screen. Two of the assailants then walk away, and one of the three assailants kicks or stomps on Mr. Hooks twice more. At 9:42:28, a white[4] jail employee, identified as Noel Covarrubias, walks up to the window of the pod office and looks down to see what is

---

[3] Mr. Hooks did not know the officer's identity at the time of the attack. Later, Mr. Hooks saw the same officer and asked a prison deputy who he was. The prison deputy identified the officer as the floor unit manager. Officer Atoki was the floor unit manager at the time of the attack. Officer Atoki denies that he was in the pod office at the time of the attack and asserts that he was working in his own separate office, just outside the pod.

[4] Officer Atoki is black.

5

happening.[5] At 9:42:43, one of the assailants resumes kicking and stomping on Mr. Hooks for two seconds. At 9:42:56, three guards, including Officer Atoki, enter the pod and see Mr. Hooks's body on the ground. At 9:44:02, two guards escort one of the assailants out of the pod in handcuffs. And at 9:44:15, four or more additional guards enter the pod. Then, at 9:45:10, guards enter the pod with a gurney for Mr. Hooks.

Camera #3 offers a different, partial view of the pod office. At no point before, during, or immediately after the attack is anyone visible through the window of the pod office.

Camera #4 offers a third view of the attack, also in the bottom righthand corner of the screen. This video shows one of the assailants leave Mr. Hooks at 9:42:18, trade shoes with another inmate, and then return to kick Mr. Hooks five more times at 9:42:43.

### B. *Procedural History*

On June 14, 2017, Mr. Hooks filed a complaint in the United States District Court for the Western District of Oklahoma. Mr. Hooks amended his complaint soon thereafter. The defendants then moved to dismiss, and a magistrate judge recommended that their motions be granted. On April 16, 2018, the district court

---

[5] In his incident report, Mr. Covarrubias stated he "could hear the commotion but not immediately see the cause," which is why he "moved to the window to get a better view." ROA, Vol. I at 666.

adopted the magistrate judge's recommendation and also granted Mr. Hooks leave to amend his complaint.

## 1. The Operative Complaint

On May 7, 2018, Mr. Hooks filed a second amended complaint against Officer Harding, Officer Irby, an unnamed booking guard, an unnamed classification guard, unnamed booking nurses, Officer Atoki, Sheriff John Whetsel, the jail's doctor,[6] and the jail. Claim I alleged deliberate indifference by the doctor for twisting wires in Mr. Hooks's mouth. Claim II alleged excessive force by Officers Harding and Irby. Claim III alleged that Sheriff Whetsel and Officer Atoki failed to protect Mr. Hooks from the attack. Claim IV alleged deliberate indifference by Sheriff Whetsel and the booking guard for failing to ask about Mr. Hooks's gang affiliations. Claim V alleged deliberate indifference by Sheriff Whetsel and an unnamed guard for moving Mr. Hooks from the 4D pod to the 4A pod. Claim VI alleged deliberate indifference by the jail, the unnamed booking nurses, and the doctor for failing to place Mr. Hooks on medical status upon his arrival at the jail.

## 2. Motions to Dismiss

The defendants again moved to dismiss, and a magistrate judge recommended that those motions (except as to Officer Atoki) be granted under 28 U.S.C. § 1915A (requiring that courts promptly screen prisoner complaints against governmental

---

[6] Mr. Hooks named "Armor Correctional Health Inc." as a defendant but his allegations are directed against the jail's doctor. We liberally construe the second amended complaint accordingly. *See James*, 724 F.3d at 1315.

entities or their officers or employees). First, the magistrate judge recommended the deliberate indifference claims against Sheriff Whetsel be dismissed because Mr. Hooks had not alleged the Sheriff's personal involvement in any of the described conduct. Second, the magistrate judge recommended the deliberate indifference claims against the doctor and the jail be dismissed because Mr. Hooks merely disagreed with the doctor's chosen course of treatment and had not alleged subjective indifference. In addition, Mr. Hooks failed to allege subjective indifference by the booking nurses. Third, the magistrate judge recommended the excessive force claim against Officers Harding and Irby be dismissed under *Heck v. Humphrey*. Fourth, the magistrate judge liberally construed Mr. Hooks's complaint as alleging an official capacity claim against the City of Bethany and Oklahoma County and recommended that any such claim be dismissed because Mr. Hooks had not alleged an unconstitutional custom or policy. On June 26, 2018, the district court adopted the magistrate judge's recommendation.

With respect to Officer Atoki's motion to dismiss, the magistrate judge recommended that it be denied on the individual capacity claim and granted on the official capacity claim. Specifically, the magistrate judge found that Mr. Hooks had alleged a plausible claim of deliberate indifference based on Officer Atoki's failure to respond more effectively to the attack. In addition, the magistrate judge found that

Officer Atoki was not entitled to qualified immunity. The district court adopted the magistrate judge's recommendation.[7]

### 3. Motion for Summary Judgment

Officer Atoki then moved for summary judgment. A magistrate judge recommended that the motion be granted, seemingly for two distinct reasons. First, the magistrate judge reasoned that Mr. Hooks had failed to show causation because the attack against him lasted "less than one minute," so Officer Atoki's intervention could not have made a difference. ROA, Vol. III at 160. Second, the magistrate judge reasoned that Mr. Hooks had failed to show subjective indifference because, at most, his version of events suggested that Officer Atoki "changed post positions without waiting for the replacing pod officer to be in a position to monitor the pod." ROA, Vol. III at 163–64. In other words, Mr. Hooks had not shown that Officer Atoki was subjectively aware of the attack at the outset.

On June 4, 2019, the district court adopted the magistrate judge's recommendation and entered judgment. Specifically, the district court agreed with the magistrate judge's analysis of causation and subjective indifference. And the district court thought it "clear" that Officer Atoki "never approached the window closely enough to see the attack . . . because he does not appear in any video recording of the office window." ROA, Vol. III at 181.

---

[7] Mr. Hooks then filed a premature notice of appeal that we dismissed for lack of appellate jurisdiction.

9

Mr. Hooks filed a timely notice of appeal.

## II.   DISCUSSION

Mr. Hooks argues (1) it was error for the district court to dismiss his excessive force claim, (2) the district court applied the wrong legal standard to his deliberate indifference claims, and (3) the district court erred in granting summary judgment to Officer Atoki. We address these arguments in the order presented.

### A.   *The District Court Erred in Dismissing Mr. Hooks's Excessive Force Claim*

"We apply the same standard of review for dismissals under § 1915(e)(2)(B)(ii) that we employ for Federal Rule of Civil Procedure 12(b)(6) motions to dismiss for failure to state a claim." *Kay*, 500 F.3d at 1217. That means "we look to the specific allegations in the complaint to determine whether they plausibly support a legal claim for relief." *Id.* at 1218 (internal quotation marks omitted).

"In *Heck*, 512 U.S. at 480–87, the Supreme Court held that a plaintiff could not bring a civil-rights claim for damages under § 1983 based on actions whose unlawfulness would render an existing criminal conviction invalid." *Havens v. Johnson*, 783 F.3d 776, 782 (10th Cir. 2015). "An excessive-force claim against an officer is not necessarily inconsistent with a conviction for assaulting the officer." *Id.* "For example, the claim may be that the officer used too much force to respond to the assault or that the officer used force after the need for force had disappeared." *Id.* "To determine the effect of *Heck* on an excessive-force claim, the court must compare the plaintiff's allegations to the offense he committed." *Id.*

10

### 1. The Offense Committed

Mr. Hooks pleaded no contest to two counts of assault and battery of a police officer. The Oklahoma crime of assault and battery upon a police officer applies to "[e]very person who, without justifiable or excusable cause knowingly commits battery or assault and battery upon the person of a police officer." Okla. Stat. Ann. tit. 21, § 649(B). The criminal information filed against Mr. Hooks vaguely referred to him "pushing and stricking (sic)" the two officers.

### 2. Mr. Hooks's Allegations

Mr. Hooks alleged that Officers Harding and Irby employed excessive force during his arrest, in violation of his Fourth Amendment rights.

> The Fourth Amendment forbids unreasonable seizures, including the use of excessive force in making an arrest. To determine whether the force used in a particular case is excessive "requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Graham v. Connor*, 490 U.S. 386, 396 (1989) (internal quotation marks omitted). The ultimate question "is whether the officers' actions are objectively reasonable in light of the facts and circumstances confronting them." *Id.* at 397 (internal quotations marks omitted). This determination "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* at 396.

*Casey v. City of Fed. Heights*, 509 F.3d 1278, 1281 (10th Cir. 2007).

Here, Mr. Hooks pleaded no contest to a severe crime (assaulting a police officer) that inherently poses an immediate threat to the safety of officers. In

11

addition, Mr. Hooks alleges he was actively resisting arrest. Consequently, there is no doubt the officers were justified in employing *some* force against Mr. Hooks.

The inquiry is nevertheless complicated because Mr. Hooks's second amended complaint alleges several distinct uses of force. First, Officer Harding removed Mr. Hooks from the car. Second, Officer Harding tried to move Mr. Hooks toward the police car. Third, Officers Harding and Irby wrestled Mr. Hooks between two cars. Fourth, Officer Irby tased Mr. Hooks. Fifth, Officer Irby tased Mr. Hooks again. And sixth, Officer Harding placed Mr. Hooks in a chokehold.

**3. Analysis**

*Heck* bars Mr. Hooks from recovering damages based on the first four alleged uses of force. Mr. Hooks's no contest plea to two counts of assault and battery of a police officer means he admitted repeatedly hitting the officers before he was subdued. For Mr. Hooks to prevail on his excessive force claim with respect to these uses, he would need to prove that it was unreasonable for the officers to defend themselves by subduing him. In other words, Mr. Hooks would need to show "he did nothing wrong." *Havens*, 783 F.3d at 783. That inquiry would necessarily entail an evaluation of whether and to what extent Mr. Hooks used force against the officers, an inquiry that would take aim at the heart of his criminal plea, thereby violating the spirit of *Heck*.[8]

---

[8] *Heck* also does not bar a claim "that [an] officer used too much force to respond to the assault." *Havens v. Johnson*, 783 F.3d 776, 782 (10th Cir. 2015).

12

The fifth and sixth uses of force are different. Those allegations align with the examples we articulated in *Havens*, i.e., "the claim may be . . . that the officer used force after the need for force had disappeared." *Id.* at 782. Mr. Hooks alleges that after Officer Irby tased him once, he fell, hit his head, and lay unmoving, on his stomach on the ground. Yet, Officer Irby tased him again and Officer Harding placed him in a chokehold. An officer can be liable for using excessive force against a suspect who "no longer posed a threat." *Estate of Smart by Smart v. City of Wichita*, 951 F.3d 1161, 1176 (10th Cir. 2020). Drawing all reasonable inferences in Mr. Hooks's favor, it is plausible that the officers were on notice that Mr. Hooks no longer posed a threat after he collapsed on his stomach on the ground.

Our decision in *Martinez v. City of Albuquerque*, 184 F.3d 1123 (10th Cir. 1999), explains how a district court should proceed when some factual allegations are barred by *Heck* and others are not. "If this case proceeds to trial while [Mr. Hooks's] state court conviction remains unimpaired, the court must instruct the jury that [Mr. Hooks's] state arrest was lawful per se." *Id.* at 1127. "The question for the jury is whether the police officers utilized excessive force in making that arrest." *Id.* "Otherwise, the jury might proceed on the incorrect assumption that the police officers had no probable cause to arrest [Mr. Hooks], and thus reach a verdict inconsistent with [Mr. Hooks's] criminal conviction." *Id.*

---

Nothing in the allegations relevant to the first four uses of force in the second amended complaint rise to that level.

The district court adopted the magistrate judge's analysis without additional comment. The magistrate judge made two errors. First, the magistrate judge noted that Mr. Hooks's second amended complaint did not mention his assault on the officers but failed to explain why that omission *necessarily* means that every use of force in the second amended complaint is barred by *Heck*. Our cases have consistently drawn a distinction between reasonable force used to subdue a suspect and unreasonable force used thereafter. *See, e.g.*, *Havens*, 783 F.3d at 782; *Estate of Smart*, 951 F.3d at 1176.

Second, the magistrate judge misinterpreted Mr. Hooks's no contest plea. Specifically, the magistrate judge determined that Mr. Hooks had pleaded no contest to *aggravated* assault and battery of a police officer, apparently because a citation to the aggravated assault and battery statute appears on the state court's electronic docket.

That citation in the state court's electronic docket appears to be a mistake, based on three considerations. First, the word "aggravated" did not appear in the criminal information. Second, Officer Harding's affidavit of probable cause states he and Officer Irby suffered only "minor cuts and bruises" during the altercation. Bethany App. at 39. Such injuries would not meet Oklahoma's definition of aggravated assault and battery. Okla. Stat. Ann. tit. 21, § 646. And third, the state court did not cite the aggravated assault and battery statute when it accepted Mr. Hooks's plea and imposed a sentence.

14

The officers defend the magistrate judge's decision by comparing the facts of this case to those in *Havens*, *DeLeon v. City of Corpus Christi*, 488 F.3d 649 (5th Cir. 2007), and *Wilson v. Rokusek*, 670 F. App'x 662 (10th Cir. 2016) (unpublished). None of those three cases applies.

*Havens* involved a plaintiff who pleaded guilty to an attempted assault on a police officer by either hitting or trying to hit the officer with a car. 783 F.3d at 779–80. The plaintiff then filed an excessive force complaint that "denied any wrongdoing." *Id.* at 781. Specifically, the complaint "said that he at no time attempted to resist arrest, claiming that the officers . . . caused [the plaintiff] to lose control of the vehicle which resulted in the vehicle lurching forward under its own volition." *Id.* (internal quotation marks omitted). We held that *Heck* applied because the guilty plea and the civil complaint were "incompatible." *Id.* at 783. Here, by contrast, Mr. Hooks has alleged an excessive force claim based on the officers' conduct after they subdued him. We expressly left open the possibility that such a claim might be viable in *Havens*.

The Fifth Circuit's decision in *DeLeon* is also inapposite. There, the plaintiff and a police officer got into a fight that ended when the police officer shot the plaintiff several times. 488 F.3d at 651. The plaintiff pleaded guilty to aggravated assault of a police officer. *Id.* Then, the plaintiff filed a civil rights complaint alleging "that he did nothing wrong, that he simply defended himself." *Id.* at 656. The court held there was "no alternative pleading or theory of recovery that would allow this claim for excessive force to proceed without interfering with" the guilty

15

plea. *Id.* Here, by contrast, Mr. Hooks admits he initially resisted arrest, "pull[ing] away" from Officer Harding and "wrestling" with both officers. ROA, Vol. I at 1445. But he claims the officers continued to use force after he was subdued. Accordingly, we have identified one theory that would interfere with Mr. Hooks's no contest plea and one that would not.

Our decision in *Wilson* is inapplicable for essentially the same reason. There, the plaintiff ran from a police officer, "stole his service vehicle, hit him with the vehicle, and then swerved at another officer." 670 F. App'x at 663. The officer eventually shot the plaintiff in the arm. *Id.* After being convicted of battery against a law enforcement officer, the plaintiff filed a civil action, alleging excessive force. *Id.* But in direct conflict to his battery conviction, the plaintiff "maintain[ed] that he did not drive the service vehicle into" the officer. *Id.* Mr. Hooks's allegations are more nuanced than that, for all the reasons already explained.[9]

---

[9] In his pro se opening brief, Mr. Hooks also argues the district court erred by dismissing his claim against the jail doctor. Specifically, Mr. Hooks alleges that a jail doctor twisted the wires that were then holding his jaw in place in a mistaken attempt to fix a problem with the wires. The twisting resulted in terrible pain.

"[O]ur caselaw firmly establishes that a doctor's exercise of considered medical judgment fails to fulfill the subjective component [of deliberate indifference], absent an extraordinary degree of neglect—*viz.*, where a prison physician responds to an obvious risk with patently unreasonable treatment." *Spencer v. Abbott*, 731 F. App'x 731, 745 (10th Cir. 2017) (unpublished) (internal quotation marks omitted). "[T]he fact that [a doctor's] reasoning may have amounted to negligence is immaterial." *Id.* at 744. Mr. Hooks does not allege the doctor was engaged in anything other than a good faith (if mistaken) attempt to fix the problem. An honest mistake in selecting a course of treatment does not amount to deliberate indifference.

**B.** *The District Court Did Not Err in Applying a Subjective Intent Standard to Mr. Hooks's Deliberate Indifference Claims*

Mr. Hooks's second argument is that the district court applied the wrong legal standard to his deliberate indifference claims. As a pretrial detainee, Mr. Hooks's claims arise under the Fourteenth Amendment. *See Burke v. Regalado*, 935 F.3d 960, 991 (10th Cir. 2019). In *Kingsley v. Hendrickson*, 576 U.S. 389 (2015), the Supreme Court "held that a plaintiff may establish an excessive force claim under the Fourteenth Amendment based exclusively on objective evidence." *Strain*, 977 F.3d at 990.

During the pendency of this appeal, we decided *Strain*. There, we "decline[d] to extend *Kingsley* to Fourteenth Amendment deliberate indifference claims" for three reasons. *Id.* at 991.

> First, *Kingsley* turned on considerations unique to excessive force claims: whether the use of force amounted to punishment, not on the status of the detainee. Next, the nature of a deliberate indifference claim infers a subjective component. Finally, principles of *stare decisis* weigh against overruling precedent to extend a Supreme Court holding to a new context or new category of claims.

*Id.*

In a Rule 28(j) letter, Mr. Hooks argues *Strain*'s analysis was limited to "deliberate indifference to *medical needs*." And to the extent *Strain* went further, Mr. Hooks argues we should treat those statements as dicta. Neither of those argument is persuasive.

### 1. What Did *Strain* Hold?

Although our opinion in *Strain* addressed a claim of medical indifference, every aspect of its reasoning applies more broadly, to Fourteenth Amendment deliberate indifference claims, including those based on a failure to prevent jailhouse violence.

First, the panel in *Strain* noted that the Supreme Court's *Kingsley* decision addressed only excessive force claims. And we further clarified that excessive force claims serve a different purpose than deliberate indifference claims. "Excessive force requires an affirmative act, while deliberate indifference often stems from inaction." *Strain*, 977 F.3d at 991. "Thus, the force of *Kingsley* does not apply to the deliberate indifference context, where the claim generally involves inaction divorced from punishment." *Id.* at 992.

Second, we explained that an inquiry into a defendant's subjective intent is inherent in the concept of deliberate indifference. "[A]n official's intent matters not only as to what the official did (or failed to do), but also why the official did it." *Id.* "Removing the subjective component from deliberate indifference claims would thus erode the intent requirement inherent in the claim." *Id.* at 993.

Third, we explained that stare decisis counseled in favor of our interpreting *Kingsley* narrowly. "Extending *Kingsley* to eliminate the subjective component of the deliberate indifference standard in the Tenth Circuit would contradict the Supreme Court's rejection of a purely objective test . . . and our longstanding precedent." *Id.*

18

None of the arguments we discussed in *Strain* are unique to an inmate's medical needs. This case provides a good illustration of that fact: Mr. Hooks does not allege that Officer Atoki employed excessive force, Officer Atoki's subjective intent is relevant to his motive, and Supreme Court precedent prior to *Kingsley* addressed facts like those at issue in this case. *See Farmer v. Brennan*, 511 U.S. 825, 830 (1994).

In fact, *Strain*'s discussion of *Farmer* strongly suggests that *Strain*'s analysis was not limited to the medical context. *Farmer* involved a claim that prison officials were deliberately indifferent to an incident where the plaintiff "was beaten and raped by another inmate." *Id.* The Supreme Court determined that deliberate indifference "requires consciousness of a risk" on the part of a defendant. *Id.* at 840. In *Strain*, we rejected a broad reading of *Kingsley*, in part, because it would contradict *Farmer* on that point. 977 F.3d at 992–93. Quite simply, that line of reasoning in *Strain* could not have been limited to the medical context, because *Farmer* was not a case about medical treatment.

## 2. Was *Strain*'s Discussion of *Kingsley* Dicta?

Contrary to Mr. Hooks's assertion, these aspects of *Strain* were not dicta. *Strain* analyzed *Kingsley* to determine the scope of the Supreme Court's holding, and defining that scope was necessary to this court's holding.

"Dicta are statements and comments in an opinion concerning some rule of law or legal proposition not necessarily involved nor essential to determination of the case in hand." *Thompson v. Weyerhaeuser Co.*, 582 F.3d 1125, 1129 (10th Cir. 2009)

19

(internal quotation marks omitted). *Strain*'s interpretation of *Kingsley* was essential to its holding that a plaintiff claiming deliberate indifference must demonstrate a defendant's subjective awareness. Otherwise, we would not have proceeded to apply our pre-*Kingsley* deliberate indifference standard to the *Strain* plaintiff's claims. *See Strain*, 977 F.3d at 993–97.[10]

## C.  *The District Court Did Not Err in Awarding Summary Judgment to Officer Atoki*

The district court granted summary judgment to Officer Atoki because it determined there was no genuine dispute as to his subjective indifference or as to causation. We agree with the district court as to Officer Atoki's subjective indifference and consequently do not address the issue of causation.

### 1.  Summary Judgment Standard

"We review a grant of summary judgment de novo and apply the same legal standard used by the district court." *Timmons v. White*, 314 F.3d 1229, 1232 (10th Cir. 2003). Summary judgment is appropriate "if the movant shows that there is no

---

[10] Mr. Hooks argues, in a footnote in his opening brief, that he has stated a plausible claim against the unnamed booking guard regardless of whether *Kingsley* applies. This is so, he argues, because the guard "*knew* of [Mr. Hooks's] gang affiliation but *still* chose to house him with a rival gang." Appellant Br. at 33 n.14 (emphasis in original).

This argument is waived. *See United States v. Walker*, 918 F.3d 1134, 1153 (10th Cir. 2019) ("Arguments raised in a perfunctory manner, such as in a footnote, are waived." (quotation marks omitted)). Other than the single footnote, all references to the booking and classification process in the argument section of Mr. Hooks's opening brief are predicated on our agreeing with him that *Strain* is not controlling.

genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

"An issue is 'genuine' if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "An issue of fact is 'material' if under the substantive law it is essential to the proper disposition of the claim." *Id.*

2. **Analysis**

"[P]rison officials have a duty to 'provide humane conditions of confinement,' including 'tak[ing] reasonable measures to guarantee the safety of . . . inmates.'" *Requena v. Roberts*, 893 F.3d 1195, 1214 (10th Cir. 2018) (alteration and omission in original) (quoting *Farmer*, 511 U.S. at 832). "This duty includes 'a duty to protect prisoners from violence at the hands of other prisoners.'" *Id.* (quoting *Farmer*, 511 U.S. at 833). Yet, "prison officials who act reasonably cannot be found liable." *Farmer*, 511 U.S. at 845.

So, to prevail, Mr. Hooks must demonstrate that Officer Atoki responded unreasonably to the attack. *See id.* at 844 (explaining that "prison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted"). Because we affirm based on Mr. Hooks's failure to demonstrate a genuine issue as to whether Officer Atoki acted unreasonably, we do not address the issue of objective harm or subjective awareness.

21

The district court granted Officer Atoki's summary judgment motion, because the district court thought it "clear" that Officer Atoki "never approached the window closely enough to see the attack . . . because he does not appear in any video recording of the office window." ROA, Vol. III at 181. This analysis is based on a version of the facts contrary to Mr. Hooks's testimony and, therefore, contrary to our summary judgment standard.

Viewing the record in the light most favorable to Mr. Hooks, Officer Atoki was in the pod office when the attack started. He was positioned somewhere Mr. Hooks could see him through the window, but not in view of camera #2 or camera #3. From those facts, it is also reasonable to infer that, like Mr. Covarrubias, Officer Atoki could hear the commotion outside the pod window. These facts and inferences are enough to establish Officer Atoki's subjective awareness of the attack but are not enough to establish that he acted unreasonably.

Mr. Hooks does not argue Officer Atoki should have intervened before or during the first attack, from 9:42:07 to 9:42:14. Rather, Mr. Hooks argues Officer Atoki should have stopped the second attack, when one of the assailants returned to resume kicking Mr. Hooks in the head, at 9:42:43. The video evidence indicates that fifteen seconds passed between the time Mr. Covarrubias looked out the window, at 9:42:28, and the time of the assailant's return, at 9:42:43. No reasonable juror could find that response time unreasonable.

Even if we consider the twenty-eight seconds that elapsed between the time Mr. Covarrubias looked out the window and the time Officer Atoki responded with

22

other guards, at 9:42:56, the result is the same. No reasonable juror could conclude that Officer Atoki sat in the pod office, heard a commotion, waited for Mr. Covarrubias to look out the window, presumably heard Mr. Covarrubias describe what was going on, deliberately decided not to respond, yet nonetheless arrived with the other guards, all in the span of twenty-eight seconds.[11] *See Deherrera v. Decker Truck Line, Inc.*, 820 F.3d 1147, 1159 (10th Cir. 2016) ("On summary judgment, although we must draw all factual inferences in favor of the nonmovant, those inferences must be reasonable." (internal quotation marks omitted)). In other words, between the point at which Officer Atoki, if stationed in the pod, would have been made aware of the first attack (that is, when Mr. Covarrubias went to the window), and the point at which Officer Atoki entered the pod with the required backup, not enough time elapsed for a reasonable juror to deem his response unreasonable. Thus, even if we accept Mr. Hooks's version of the facts, a reasonable jury could not conclude that Officer Atoki was deliberately indifferent.

---

[11] As the district court found, "it is undisputed that a detention office[r] could not respond to a disturbance without backup." ROA, Vol. III at 181.

### III. CONCLUSION

We reverse and remand for further proceedings on Mr. Hooks's excessive force claim against Officers Harding and Irby. We otherwise affirm.[12]

We remind Mr. Hooks that he is obligated to continue making partial payments until the entire filing fee associated with this appeal has been paid.

---

[12] Mr. Hooks's pro se motion asking that we order his transfer to Joseph Harp Medical Prison is denied. Mr. Hooks filed an action in district court challenging the warden's denial of his transfer request, which is the proper course for such a challenge. *See Hooks v. Yandell*, No. CIV 18-399-RAW-SPS, 2020 WL 5898782 (E.D. Okla. Oct. 5, 2020). The district court dismissed Mr. Hooks's complaint and entered judgment in favor of the defendants. *Id.* Mr. Hooks has appealed to this court, and his claims will be considered in that separate proceeding. *See Hooks v. Yandell*, No. 20-7061.