FILED
**United States Court of Appeals**
**Tenth Circuit**

**November 9, 2022**

**Christopher M. Wolpert**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

MICHAELLA LYNN SURAT,

    Plaintiff - Appellee,

v.

RANDALL KLAMSER, in his individual
capacity,

    Defendant - Appellant,

and

CITY OF FORT COLLINS, COLORADO,
a municipality,

    Defendant.

No. 21-1284

_____

**Appeal from the United States District Court**
**for the District of Colorado**
**(D.C. No. 1:19-CV-00901-WJM-NRN)**
_____

Andrew D. Ringel, Hall & Evans, L.L.C., Denver, Colorado (Mark S. Ratner, Hall &
Evans, L.L.C., Denver, Colorado; and John R. Duval, Deputy City Attorney, Fort Collins,
Colorado, with him on the briefs), for Defendant – Appellant.

Catherine E. Ordoñez, Killmer, Lane & Newman, LLP (Andrew McNulty and David A.
Lane with her on the brief), Denver, Colorado, for Plaintiff – Appellee.
_____

Before **BACHARACH**, **McHUGH**, and **MORITZ**, Circuit Judges.
_____

**McHUGH**, Circuit Judge.

_____

Plaintiff-Appellee Michaella Lynn Surat brought this action pursuant to 42 U.S.C. § 1983 against Defendant-Appellant Officer Randall Klamser, alleging he violated her right to be free from excessive force during her arrest for misdemeanor charges of obstructing a peace officer and resisting arrest. Officer Klamser moved to dismiss based on *Heck v. Humphrey*,[1] arguing Ms. Surat's claim was barred by her underlying convictions. The district court granted Officer Klamser's motion, in part, holding that *Heck* did not bar Ms. Surat's claim that Officer Klamser used excessive force to overcome her resistance when he slammed her face-first into the ground.

Officer Klamser then moved for summary judgment based on qualified immunity, but the district court denied his motion. The district court concluded a reasonable jury could have found Officer Klamser used excessive force to overcome Ms. Surat's resistance to arrest. Additionally, the district court determined Officer Klamser's force violated clearly established law. In this interlocutory appeal from the denial of summary judgment, Officer Klamser asserts the district court erred because his use of force was reasonable and, alternatively, because the law did not clearly establish that his action during the arrest violated the Fourth Amendment.

Although we agree with the district court that Officer Klamser's use of force violated the Fourth Amendment, we disagree that clearly established law existing at

---

[1] 512 U.S. 477 (1994).

2

the time of the incident would have put a reasonable officer on notice that his conduct was unlawful. Accordingly, we reverse.

## I.    BACKGROUND

### A.    *Factual History*

In reviewing an interlocutory appeal from the denial of summary judgment based on qualified immunity, this court "must accept any facts that the district court assumed in denying summary judgment." *Amundsen v. Jones*, 533 F.3d 1192, 1196 (10th Cir. 2008). Accordingly, we draw our facts from the district court's summary judgment order, in which the district court viewed the evidence in the light most favorable to Ms. Surat as the nonmoving party. We also include facts the parties do not dispute on appeal. *See Walker v. City of Orem*, 451 F.3d 1139, 1155 (10th Cir. 2006) (noting the "reviewing court need not look solely to plaintiff's version of facts where facts are undisputed").

In April 2017, Ms. Surat was celebrating her twenty-second birthday at a bar in Fort Collins, Colorado. At approximately 11:12 p.m., two Fort Collins police officers, Officer Garrett Pastor and Officer Klamser, were dispatched to the bar in response to a reported disturbance involving Ms. Surat's then-boyfriend, Mitchell Waltz. While Officer Pastor spoke with Mr. Waltz, Officer Klamser spoke with the bar's bouncer. Ms. Surat attempted to exit the bar and "lightly bump[ed] [Officer] Klamser" as she walked past him. App. Vol. 5 at 93.

Ms. Surat approached Mr. Waltz and tried to walk away from the scene with him. Upon learning from the bouncer that Mr. Waltz was involved in the disturbance, Officer

3

Klamser yelled to Officer Pastor that Mr. Waltz was not free to go. Officer Pastor began

interviewing Mr. Waltz and Ms. Surat tried "to walk toward [Mr.] Waltz." *Id.* at 94.

Officer Klamser, "standing six feet tall and weighing approximately 200 pounds,"

blocked the 115-pound Ms. Surat from obstructing Officer Pastor's interview. *Id.* at 97.

He "placed [Ms.] Surat under arrest and held her by her wrist." *Id.* at 94. In response,

Ms. Surat "attempted to pry [Officer Klamser's] fingers off of her arm and pawed at [his]

arms." *Id.* Officer Klamser then used a takedown maneuver, "throwing [Ms.] Surat to the

ground to subdue her." *Id.* Ms. Surat "sustained a concussion, cervical spine strain,

contusions to her face, and bruising on her arms, wrists, knees, and legs." *Id.*

After the incident, Ms. Surat was charged with obstructing a peace officer and

resisting arrest. Ms. Surat pleaded not guilty to both charges and asserted a theory of self-

defense, arguing she used physical force against Officer Klamser to defend herself "from

what a reasonable person would believe to be the use . . . of unlawful physical force."

App. Vol. 4 at 201. The jury rejected her theory of self-defense and convicted her of both

charges.

### B.    *Procedural History*

In March 2019, Ms. Surat filed a complaint in the United States District Court for

the District of Colorado, alleging Officer Klamser violated her constitutional rights by

subjecting her to excessive force during her arrest.[2] She alleged that in executing her

---

[2] Ms. Surat also asserted a municipal liability claim against the City of Fort
Collins ("City") under *Monell v. Dep't of Social Services*, 436 U.S. 658 (1978),
alleging Officer Klamser's excessive force was consistent with the City's

arrest, Officer Klamser "used greater force than would have been reasonably necessary to effect the seizure . . . by, among other things, pulling her arm by her wrist and throwing her face-first to the sidewalk." App. Vol. 1 at 32.

Officer Klamser filed a motion to dismiss Ms. Surat's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). He argued the court should dismiss Ms. Surat's excessive force claim because it was barred by *Heck*, as she relied on facts contrary to her convictions for resisting arrest and obstructing a peace officer. The district court granted in part and denied in part Officer Klamser's motion. The court dismissed with prejudice Ms. Surat's excessive force claim "*except* to the extent [Ms.] Surat claim[ed] [Officer] Klamser used excessive force to overcome her resistance to arrest." *Id.* at 154. Because the court understood Ms. Surat to be challenging both the takedown and the initial force of grabbing her arm that triggered her resistance, it concluded *Heck* barred only the latter portion of her excessive force claim. In denying in part Officer Klamser's motion to dismiss, the district court noted Ms. Surat had a "formidable" burden ahead of her in litigating this claim:

> if [Officer] Klamser ever asserts qualified immunity (he ha[d] not done so in the Motion to Dismiss), then [Ms.] Surat's burden is even more formidable. She must prove that it was clearly established as of April []2017, that a police officer attempting to effect a[n] arrest and being subjected to or threatened with physical force or violence, or facing a substantial risk of bodily injury, and who has already tried lawful lesser force to subdue the arrestee, cannot use the takedown maneuver used in this case to eliminate that actual or threatened force or risk of injury.

---

unconstitutional practices and policies, and that the City failed to train Officer Klamser. This claim is not before us in this appeal.

*Id.* at 168 (referencing Ms. Surat's conviction for resisting arrest pursuant to Colo. Rev. Stat. § 18-8-103(1)).

After engaging in discovery, Officer Klamser filed a motion for summary judgment on the basis of qualified immunity. He argued Ms. Surat could not meet the "formidable" burden outlined by the district court because, in light of her obstruction of a peace officer and resistance to arrest convictions, his "takedown" of Ms. Surat was objectively reasonable and did not violate clearly established law. The district court denied the motion. In doing so, it first concluded Ms. Surat had established a genuine issue of material fact as to whether Officer Klamser's use of a "takedown" violated Ms. Surat's Fourth Amendment right to be free from excessive force given her misdemeanor offense, minimal resistance, and that she did not pose an immediate threat to Officer Klamser or others. The district court then concluded Officer Klamser was not entitled to qualified immunity because clearly established law would have put a reasonable officer on notice "that an officer may not use a takedown maneuver on an unarmed misdemeanant who poses little to no threat to the officer's safety." App. Vol. 5 at 100.

Officer Klamser timely appealed the district court's ruling. Ms. Surat filed a motion to dismiss the appeal, arguing this court lacks appellate jurisdiction to review Officer Klamser's arguments challenging the district court's denial of summary judgment.

## II.    DISCUSSION

Officer Klamser claims the district court erred in denying his summary judgment motion based on qualified immunity. We begin by setting forth the jurisdictional standards relevant to this appeal. After assuring ourselves of our jurisdiction, we address Officer Klamser's qualified immunity arguments.

### A.    Appellate Jurisdiction

Ms. Surat contends we lack jurisdiction over this interlocutory appeal because the district court denied Officer Klamser's motion for summary judgment based on a finding of disputed issues of material fact. We disagree that this finding precludes our appellate jurisdiction over Officer Klamser's appeal.

Generally, we may exercise jurisdiction only over appeals from "final decisions of the district courts of the United States." 28 U.S.C. § 1291. "Orders denying summary judgment are ordinarily not appealable final decisions for purposes of § 1291." *Duda v. Elder*, 7 F.4th 899, 909 (10th Cir. 2021) (quotation marks, brackets, and ellipsis omitted). Under the collateral order doctrine, however, we may also review "decisions that are conclusive on the question decided, resolve important questions separate from the merits, and are effectively unreviewable if not addressed through an interlocutory appeal." *Id.* (quotation marks omitted). This doctrine allows us to review interlocutory appeals from "the denial of qualified immunity to a public official to the extent it involves abstract issues of law." *Id.* (citing *Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985)) (quotation marks, brackets, and ellipsis omitted). Abstract issues of law are limited to "(1) whether the facts that the district court ruled a reasonable jury could find would suffice to show a

7

legal violation" and "(2) whether that law was clearly established at the time of the alleged violation." *Vette v. K-9 Unit Deputy Sanders*, 989 F.3d 1154, 1162 (10th Cir. 2021) (quotation marks omitted). Because of this limitation, we "generally lack[] jurisdiction to review factual disputes in this interlocutory posture," including "the district court's determination that the evidence could support a finding that particular conduct occurred." *Id.* (internal quotation marks and ellipsis omitted). "[I]f a district court concludes a reasonable jury could find certain specified facts in favor of the plaintiff, we must usually take them as true—and do so even if our own de novo review of the record might suggest otherwise as a matter of law." *Id.* (quotation marks and ellipsis omitted).[3]

Ms. Surat argues we lack jurisdiction over this interlocutory appeal because "the district court's denial of qualified immunity was based on a finding of material issues of fact." Motion to Dismiss Appeal at 8 (citing *Johnson v. Jones*, 515 U.S. 304, 317 (1995);

---

[3] This jurisdictional rule is subject to a few exceptions. If the district court does not specify "the particular charged conduct that it deemed adequately supported by the record, we may look behind the order denying summary judgment and review the entire record *de novo* to determine for ourselves as a matter of law which factual inferences a reasonable jury could and could not make." *Lewis v. Tripp*, 604 F.3d 1221, 1225 (10th Cir. 2010). "Second, when the 'version of events' the district court holds a reasonable jury could credit 'is blatantly contradicted by the record,' we may assess the case based on our own *de novo* view of which facts a reasonable jury could accept as true." *Id.* at 1225–26 (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)). Finally, this court "need not defer to the district court's assessment of the reasonable factual inferences that arise from a complaint at the motion to dismiss stage." *Id.* at 1226. The first and third of these exceptions are inapplicable, and Officer Klamser has not advanced an argument in support of the second.

*Behrens v. Pelletier*, 516 U.S. 299, 313 (1996)).[4] The Supreme Court has clarified that the "[d]enial of summary judgment often includes a determination that there are controverted issues of material fact, and *Johnson* [*v. Jones*] surely does not mean that *every* such denial of summary judgment is nonappealable." *Behrens*, 516 U.S. at 312–13 (citation omitted). Instead, "*Johnson* held, simply, that determinations of evidentiary sufficiency at summary judgment are not immediately appealable merely because they happen to arise in a qualified-immunity case." *Id.* at 313. This court has jurisdiction to review denials of summary judgment based on a finding of material issues of fact by taking as true the facts the district court "conclude[d] a reasonable jury could find . . . in favor of the plaintiff" to consider "abstract questions of law." *Vette*, 989 F.3d at 1162 (internal quotation marks omitted). .

Officer Klamser challenges the district court's denial of his assertion of qualified immunity based on his view that the facts the district court determined a reasonable jury could find are inconsistent with the undisputed facts supporting Ms. Surat's convictions for resisting arrest and obstructing a peace officer. Alternatively, he asserts Ms. Surat failed to demonstrate the right he allegedly violated was clearly established. Although there are moments where Officer Klamser's briefing shades the facts in a light more favorable to him, we have jurisdiction to determine "whether the facts that the district court ruled a reasonable jury could find would suffice to show" Officer Klamser's

---

[4] Ms. Surat also argues we lack jurisdiction because the appeal is frivolous. But she does not explain why the frivolity of Officer Klamser's appeal would affect our jurisdiction or move for sanctions pursuant to Federal Rule of Appellate Procedure 38.

takedown of Ms. Surat during her arrest was unreasonable. *Vette*, 989 F.3d at 1162 (quotation marks omitted). Given this view of the facts, we may review these abstract issues of law. *Id.* Similarly, we may also determine whether Ms. Surat's constitutional right at issue was clearly established at the time of the alleged violation. *Id.* Being satisfied that we have jurisdiction over the abstract issues of law presented by Officer Klamser's appeal, we deny Ms. Surat's motion to dismiss the appeal.

### B.    *Qualified Immunity*

Before turning to the merits, we provide the standard of review and legal requirements of a qualified immunity defense. We then address Officer Klamser's arguments to assess whether the district court correctly denied his motion for summary judgment. We conclude it did not. Although a reasonable jury could find Officer Klamser used excessive force, Ms. Surat has pointed to no clearly established law that would have put every reasonable officer on notice that the conduct violated the Fourth Amendment. Because Officer Klamser is entitled to qualified immunity, we reverse the order denying his motion for summary judgment.

### 1.    Standard of Review and Legal Standard

"We review the district court's denial of summary judgment on qualified immunity grounds de novo, with our review limited to purely legal issues." *Quinn v. Young*, 780 F.3d 998, 1004 (10th Cir. 2015). In applying this standard, we "ordinarily must accept the version of facts the district court assumed true at summary judgment." *Vette*, 989 F.3d at 1162.

Qualified immunity "protects 'all but the plainly incompetent or those who knowingly violate the law.'" *White v. Pauly*, 137 S. Ct. 548, 551 (2017) (per curiam) (quoting *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (per curiam)). To overcome a qualified immunity defense, "the onus is on the plaintiff to demonstrate '(1) that the official violated a statutory or constitutional right, and (2) that the right was "clearly established" at the time of the challenged conduct.'" *Quinn*, 780 F.3d at 1004 (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011)) (emphasis omitted). As the plaintiff must satisfy both prongs of this analysis, we may address the prongs in any order. *Id.* But addressing both prongs of the test "promotes the development of constitutional precedent and is especially valuable with respect to questions that do not frequently arise in cases in which a qualified immunity defense is unavailable." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

Officer Klamser contends the district court erred in denying him qualified immunity for throwing Ms. Surat to the ground during her arrest for two reasons. First, he claims that her convictions for resisting arrest and obstructing a peace officer preclude this force from amounting to a constitutional violation. Second, even if he used excessive force during Ms. Surat's arrest, Officer Klamser argues the law was not clearly established at the time such that every reasonable officer would know the level of force was unconstitutional. Although we agree with the district court that the force was excessive in violation of the Fourth Amendment, we conclude the district court erred in holding the law was clearly established at the time of the incident.

11

## 2.    Constitutional Violation

"When a plaintiff alleges excessive force during an investigation or arrest, the federal right at issue is the Fourth Amendment right against unreasonable seizures." *Tolan v. Cotton*, 572 U.S. 650, 656 (2014). To assess reasonableness, we "look[] at the facts and circumstances as they existed at the moment the force was used, while also taking into consideration the events leading up to that moment." *Emmett v. Armstrong*, 973 F.3d 1127, 1135 (10th Cir. 2020). "The inquiry is an objective one, and one that considers the totality of the circumstances." *Vette*, 989 F.3d at 1169. We must judge an officer's use of force "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight" and this "calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Graham v. Connor*, 490 U.S. 386, 396–97 (1989). "The ultimate question 'is whether the officers' actions are objectively reasonable in light of the facts and circumstances confronting them.'" *Casey v. City of Fed. Heights*, 509 F.3d 1278, 1281 (10th Cir. 2007) (quoting *Graham*, 490 U.S. at 397).

Officer Klamser makes two arguments challenging the district court's ruling that a reasonable jury could find his use of a takedown maneuver during Ms. Surat's arrest violated her Fourth Amendment right to be free from excessive force. First, he argues the district court did not properly limit the facts to avoid implying the invalidity of her underlying convictions. Second, Officer Klamser argues, under the facts assumed by the

12

district court, his use of force during Ms. Surat's arrest did not amount to a constitutional violation. We take each argument in turn.

a.      *Scope of facts*

"The first step in assessing the constitutionality of [an official's] actions is to determine the relevant facts." *Scott v. Harris*, 550 U.S. 372, 378 (2007). Before considering the merits of Officer Klamser's argument as to the first qualified immunity prong, we address his claim that the district court denied him qualified immunity by relying on facts inconsistent with Ms. Surat's underlying convictions for obstructing a peace officer and resisting arrest, including the jury's rejection of her theory of self-defense. In other words, Officer Klamser argues the district court erred in its consideration of the first qualified immunity prong by relying on facts barred by *Heck*.[5]

---

[5] Ms. Surat argues this court lacks appellate jurisdiction over this argument because "[Officer] Klamser is dressing up a *Heck* challenge as a qualified immunity challenge." Appellee's Br. at 18. Courts generally decline to exercise jurisdiction over *Heck* rulings raised on interlocutory appeal from the denial of qualified immunity. *See, e.g.*, *Cunningham v. Gates*, 229 F.3d 1271, 1284 (9th Cir. 2000) (holding that the denial of qualified immunity is an immediately appealable collateral order but *Heck rulings* are not because they are effectively reviewable on appeal); *Sayed v. Virginia*, 744 F. App'x 542, 547 (10th Cir. 2018) (unpublished) (collecting cases). But Officer Klamser does not ask us to review the district court's *Heck* ruling. Instead, he has presented the legal question of the effect of *Heck* on the facts available to constitute a Fourth Amendment violation. This question falls within our jurisdiction for an interlocutory appeal. *See Medina v. Cram*, 252 F.3d 1124, 1130–31 (10th Cir. 2001) (noting we have jurisdiction over interlocutory qualified immunity appeals presenting "abstract issues of law" based on undisputed facts and facts assumed by the district court); *see also El v. City of Pittsburgh*, 975 F.3d 327, 338 (3d Cir. 2020) (noting during an interlocutory appeal that the district court's determination on the first prong of qualified immunity "d[id] not implicitly undermine [the plaintiff's] disorderly conduct conviction").

In *Heck*, "the Supreme Court held that a plaintiff could not bring a civil-rights claim for damages under § 1983 based on actions whose unlawfulness would render an existing criminal conviction invalid." *Havens v. Johnson*, 783 F.3d 776, 782 (10th Cir. 2015) (citing *Heck*, 512 U.S. at 480–87). However, "[a]n excessive-force claim against an officer is not necessarily inconsistent with a conviction for" resisting arrest. *Id.* "For example, the claim may be that the officer used too much force to respond to the [resistance] or that the officer used force after the need for force had disappeared." *Id.* "To determine the effect of *Heck* on an excessive-force claim, the court must compare the plaintiff's allegations to the offense he committed." *Id.*

In its ruling on Officer Klamser's motion to dismiss, the district court framed the scope of permissible facts upon which Ms. Surat may rely without implying the invalidity of her underlying convictions:

> She must prove that it was clearly established as of April 6, 2017, that a police officer attempting to effect a[n] arrest and being subjected to or threatened with physical force or violence, or facing a substantial risk of bodily injury, and who has already tried lawful lesser force to subdue the arrestee, cannot use the takedown maneuver used in this case to eliminate that actual or threatened force or risk of injury.

App. Vol. 1 at 168. Officer Klamser now argues the district court failed to apply this scope of permissible facts when considering his motion for summary judgment as to Ms. Surat's excessive force claim.

As an initial matter, Officer Klamser does not identify the facts he believes are inconsistent with Ms. Surat's underlying convictions. Instead, he quotes large swaths of the district court's fact section and legal analysis from the order denying his

motion for summary judgment and asks us to compare those facts with the statement from the court's prior order. *See*, *e.g.*, Appellant's Br. at 20 ("As these excerpts from the District Court's Order manifest, the District Court did not limit either its factual or legal analysis as it should have under *Heck* for the purpose of assessing Officer Klamser's qualified immunity."); Reply at 3 ("Any comparison of the [district court's orders denying defendants' motion to dismiss and motion for summary judgment] . . . demonstrates unequivocally the District Court's factual recitation and legal analysis used facts to support [Ms. Surat's] excessive force claim which were inconsistent with *Heck.*"). Without specifically identifying the facts he believes necessarily imply the invalidity of Ms. Surat's convictions, Officer Klamser has not adequately presented this challenge.

Moreover, the district court did not rely on facts inconsistent with Ms. Surat's convictions to support the first prong of qualified immunity. "To determine the effect of *Heck* on an excessive-force claim, the court must compare the plaintiff's allegations to the offense [s]he committed." *Havens*, 783 F.3d at 782. The elements supporting Ms. Surat's conviction for resisting arrest include,

> knowingly prevent[ing] or attempt[ing] to prevent a peace officer . . . from effecting an arrest of the actor or another, by: (a) [u]sing or threatening to use physical force or violence against the peace officer or another; or (b) [u]sing any other means which creates a substantial risk of causing bodily injury to the peace officer or another.

Colo. Rev. Stat. § 18-8-103(1). The required elements supporting her conviction for obstructing a peace officer include, "using or threatening to use violence, force, physical interference, or an obstacle, [by] knowingly obstruct[ing], impair[ing], or

15

hinder[ing] the enforcement of the penal law or the preservation of the peace by a peace officer." *Id.* § 18-8-104(1)(a). The jury also declined Ms. Surat's theory of self-defense for each conviction, which included rejecting her assertion that she (1) used "physical force in order to defend herself . . . from what a reasonable person would believe to be the use . . . of unlawful physical force by [Officer Klamser];" (2) she "used a degree of force which a reasonable person would believe to be necessary for that purpose;" or (3) "she was not the initial aggressor, or, if she was the initial aggressor, she had withdrawn from the encounter and effectively communicated to [Officer Klamser] her intent to do so, and [he] nevertheless continued or threatened the use of unlawful physical force." App. Vol. 4 at 201.

In concluding Ms. Surat had met her burden on the first prong of qualified immunity, the district court relied on the following facts: (1) she was convicted of resisting arrest and obstruction of a peace officer; (2) she was a twenty-two-year-old, 115-pound woman, who was unarmed, and restrained in a wrist hold by an officer twice her size. The district court also concluded a reasonable jury could find (3) Ms. Surat did not hit Officer Klamser or physically assault him as he attempted to place her in handcuffs, but that (4) she did use physical force to resist her arrest by pulling away from his grip, attempting to pry his fingers off of her arm, and pawing at his arms.

These facts do not conflict with her underlying convictions for obstructing a peace officer or resisting arrest. The district court does not suggest Ms. Surat did not use physical force against Officer Klamser, or that her physical force was justified.

16

Instead, it acknowledges she resisted arrest by using physical force against Officer

Klamser. And the conclusion that the jury could find Ms. Surat used physical force

rather than violence is not inconsistent with the elements of her convictions. *See*

Colo. Rev. Stat. § 18-8-103(1) (prohibiting the use of "physical force *or* violence

against the peace officer . . . *or* . . . any other means which creates a substantial risk

of causing bodily injury to the peace officer"); *id.* § 18-8-104 (prohibiting the "us[e]

*or* threat[] [of] violence, force, physical interference, or an obstacle") (emphasis

added). Ms. Surat's use of physical force against Officer Klamser is also not

inconsistent with a conclusion that she did not pose an imminent threat of danger to

him, or that more than minimal force was unreasonable in response. Accordingly, we

reject Officer Klamser's *Heck*-based challenges to the district court's assessment of

the facts and turn to whether Ms. Surat has shown a reasonable jury could find Officer

Klamser violated her Fourth Amendment right to be free from excessive force.

    *b.*    Graham *factors*

The Supreme Court in *Graham* outlined three factors that guide the Fourth

Amendment excessive force analysis: (1) "the severity of the crime at issue,"

(2) "whether the suspect poses an immediate threat to the safety of the officers or others,"

and (3) "whether [s]he is actively resisting arrest or attempting to evade arrest by flight."

*Graham*, 490 U.S. at 396. The district court concluded the first and second *Graham*

factors weighed in favor of a determination that Officer Klamser employed excessive

force, and the latter factor weighed slightly against such a determination. After weighing

the factors and considering the totality of the circumstances, the district court concluded a

17

reasonable jury could find Officer Klamser's takedown of Ms. Surat during her arrest

violated her constitutional right to be free from excessive force. Our de novo review leads

us to the same conclusion. We address each *Graham* factor below.

   i.   <u>Severity of the crime</u>

   The first *Graham* factor—"the severity of the crime at issue"—favors

Ms. Surat because her conduct of resisting arrest and obstructing a peace officer,

were not severe crimes. *Graham*, 490 U.S. at 396. In Colorado, obstructing a peace

officer and resisting arrest are both class 2 misdemeanors.[6] *See* Colo. Rev. Stat. § 18-

8-103(4); *id.* at § 18-8-104(4). Although both crimes may be achieved by violent

means, taken in the light most favorable to Ms. Surat, a jury could conclude she

committed both crimes in a "particularly harmless manner," *Casey*, 509 F.3d at 1281,

where the only physical force she used was "attempt[ing] to pry [Officer] Klamser's

fingers off of her arm and paw[ing] at [his] arms," App. Vol. 5 at 94. Because these

are misdemeanor offenses and a jury could find they were committed in a nonviolent

---

   [6] In her original criminal complaint, Ms. Surat was charged with third-degree assault, a class 1 misdemeanor in violation of Section 18-3-204 of the Colorado Revised Statutes. This court has indicated we should consider the offense for which the officer thought he had probable cause. *See Cortez v. McCauley*, 478 F.3d 1108, 1126–27 (10th Cir. 2007) (en banc) (a plaintiff has no claim for excessive force if the police "use no more force than would have been reasonably necessary if the arrest or the detention were warranted"); *Fogarty v. Gallegos*, 523 F.3d 1147, 1160 (10th Cir. 2008) ("Assuming for the purposes of our independent excessive force analysis" that the defendant had committed a misdemeanor, even though the police had no probable cause to arrest him for that misdemeanor). But Officer Klamser does not argue this factor should be weighed in light of the initial charge for third-degree assault and instead relies on her misdemeanor conviction for resisting arrest. Accordingly, we do not address whether this factor would weigh differently based on suspicion of the assault charge.

manner, "the amount of force used should [be] reduced accordingly." *Fogarty*, 523 F.3d at 1160. Here, Ms. Surat's misdemeanor offenses weigh against Officer Klamser's use of the takedown maneuver during her arrest.

ii.     Immediacy of threat

The second factor, "whether the suspect poses an immediate threat to the safety of the officer[] or others," *Graham*, 490 U.S. at 396, "is undoubtedly the 'most important' and fact intensive factor in determining the objective reasonableness of an officer's use of force," *Pauly v. White*, 874 F.3d 1197, 1215–16 (10th Cir. 2017) (quoting *Bryan v. MacPherson*, 630 F.3d 805, 826 (9th Cir. 2010)). The district court concluded this factor favors Ms. Surat. We agree.

In evaluating this factor, this court "must look at whether the officers or others were in danger at the precise moment that they used force." *Emmett*, 973 F.3d at 1136 (internal quotation marks omitted). Under the version of facts assumed true by the district court at summary judgment, Ms. Surat did not pose an immediate threat to Officer Klamser or anyone else at the moment Officer Klamser slammed her violently to the ground. Instead, it is undisputed that Officer Klamser held Ms. Surat by the wrist, she was unarmed, and she weighed eighty-five pounds less than Officer Klamser. Although Ms. Surat used minimal physical force against Officer Klamser by attempting to pry his fingers off of her arm and pawing at him, this did not place Officer Klamser or others in immediate danger. Officer Klamser argues Ms. Surat used more force in resisting arrest than acknowledged by the district court, but we do not credit his version of events in this interlocutory posture. *See id.* at 1135. If the

19

case proceeded to trial, "the factfinder w[ould] have to decide" whether Ms. Surat was a threat to the officers, *id.*, but at this stage, we "accept the version of facts the district court assumed true at summary judgment," *Vette*, 989 F.3d at 1162. Under these circumstances, Ms. Surat posed a minimal safety threat at the moment Officer Klamser threw her to the ground, and the second *Graham* factor weighs against Officer Klamser's use of significant force.

### iii.    Resistance or evasion

As to the third factor, we evaluate whether the suspect "attempt[ed] to flee or actively resist[ed] the arrest." *Harte v. Bd. of Comm'rs of Cnty. of Johnson, Kan.*, 864 F.3d 1154, 1191 (10th Cir. 2017). Ms. Surat's resistance to arrest is conclusively established by her conviction. We have explained that where a plaintiff acknowledges she was "actively resisting arrest . . . there is no doubt th[at] officers [are] justified in employing *some* force against" the plaintiff. *Hooks v. Atoki*, 983 F.3d 1193, 1200 (10th Cir. 2020). The level of Ms. Surat's resistance—attempting to pry Officer Klamser's fingers off of her arm and pawing at him—does not justify a severe use of force in response. Accordingly, although this factor weighs in favor of Officer Klamser reasonably using some force against Ms. Surat to overcome her resistance, his use of force had to be proportionate. *See Perea v. Baca*, 817 F.3d 1198, 1203 (10th Cir. 2016) (noting "the relevant inquiry is whether the [use of force] was reasonable and proportionate given [the arrestee's] resistance"). Like the district court, we weigh this factor as providing support for the use of minimal force.

20

Accepting the facts assumed by the district court in denying summary judgment, Officer Klamser's use of the takedown maneuver during Ms. Surat's arrest was objectively unreasonable. Ms. Surat was arrested for two misdemeanor offenses, committed in a particularly harmless manner. She did not pose a threat to Officer Klamser or others after he initiated the arrest. Although she did minimally resist arrest, Officer Klamser's alleged use of force against Ms. Surat—using a takedown maneuver to slam her face into the ground—was not proportionate given her level of resistance. We therefore hold that the use of the takedown maneuver to slam to the ground a nonviolent misdemeanant who poses no immediate threat to the officer or others based on minimal resistance to arrest is unreasonable and constitutes excessive force under the Fourth Amendment.

**3.    Clearly Established Law**

Having determined Ms. Surat's version of the facts establishes a violation of her constitutional right to be free from excessive force, the next question is whether that right was clearly established at the time the alleged conduct occurred. In other words, the question is whether Ms. Surat's right not to be thrown to the ground while she was resisting arrest but did not pose a danger to Officer Klamser was clearly established by April 2017. Unlike the district court, we answer this question in the negative.

*a.    Legal standard*

"In order for a constitutional right to be clearly established, the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Quinn*, 780 F.3d at 1004–05 (internal quotation marks and

21

brackets omitted). "In other words, existing law must have placed the constitutionality of the officer's conduct 'beyond debate.'" *District of Columbia v. Wesby*, 138 S. Ct. 577, 589 (2018) (quoting *al-Kidd*, 563 U.S. at 741). "This demanding standard protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Id.* (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

While "the Supreme Court has 'repeatedly told courts not to define clearly established law at a high level of generality,'" it has also explained that "'officials can still be on notice that their conduct violates established law even in novel factual circumstances.'" *Quinn*, 780 F.3d at 1005 (first quoting *al-Kidd*, 563 U.S. at 742, then quoting *Hope v. Pelzer*, 536 U.S. 730, 741 (2002)). But other binding precedent informs that "the clearly established law must be 'particularized' to the facts of the case." *White*, 137 S. Ct. at 552 (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). And plaintiffs may not identify their claim through "extremely abstract rights" because this would convert the rule of qualified immunity "into a rule of virtually unqualified liability." *Id.* (quoting *Anderson*, 483 U.S. at 639). Ultimately, this court must assess whether "existing precedent [has] placed the statutory or constitutional question beyond debate." *Id.* (quoting *Mullenix*, 577 U.S. at 12).

"A plaintiff may satisfy this standard by identifying an on-point Supreme Court or published Tenth Circuit decision; alternatively, the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Quinn*, 780 F.3d at 1005 (internal quotation marks omitted). Additionally, "there can be the rare obvious case, where the unlawfulness of the officer's conduct is sufficiently clear even

22

though existing precedent does not address similar circumstances." *Est. of Ceballos v. Husk*, 919 F.3d 1204, 1218 (10th Cir. 2019) (quoting *Wesby*, 138 S. Ct. at 590).

       b.     *Application*

In April 2017, a reasonable officer would not have known that using a takedown maneuver to throw Ms. Surat to the ground while she was resisting arrest for a non-violent misdemeanor and not posing an immediate danger to Officer Klamser would violate the Fourth Amendment. Ms. Surat maintains she has met her burden on the second qualified immunity prong by (1) identifying an on-point published Tenth Circuit decision, (2) relying on out-of-circuit authority and a handful of unpublished cases from this circuit to meet the weight of authority standard, and (3) demonstrating this is an obvious case where the unlawfulness of Officer Klamser's conduct is sufficiently clear. We disagree.

In denying Officer Klamser's motion for summary judgment, the district court cited one published case from this circuit: *Morris v. Noe*, 672 F.3d 1185 (10th Cir. 2012). We are not persuaded this case would have alerted a reasonable officer that the takedown of Ms. Surat during her arrest was unconstitutional. In *Morris*, this court considered an appeal from the denial of qualified immunity in a case where officers threw a suspected misdemeanant to the ground with no warning after he backed toward them with his hands up, offering no resistance. *Id.* at 1190, 1193. We concluded the plaintiff had met his burden on the first qualified immunity prong because the decedent "posed no threat to [the officer] or others, nor did he resist or flee." *Id.* at 1198.

We concluded in *Morris* that the arrestee did not resist arrest. *Id.* at 1196 (noting the decedent "did not struggle with the officers before or after they took him to the ground"). To the contrary, Ms. Surat had "attempted to pry [Officer] Klamser's fingers off of her arm and pawed at [his] arms" before Officer Klamser threw her to the ground. App. Vol. 5 at 94. The existence of some level of resistance to arrest meaningfully distinguishes *Morris* from the case at hand such that it does not "squarely govern," *Mullenix*, 577 U.S. at 15, the facts of this case and did not "put an objective officer in [Officer Klamser's] position on notice that he was violating [Ms. Surat]'s Fourth Amendment rights," *Emmett*, 973 F.3d at 1137. Because Ms. Surat has not identified a Supreme Court or other published Tenth Circuit case addressing facts sufficiently similar to those surrounding Ms. Surat's arrest, we next turn to her reliance on out-of-circuit decisions and a handful of unpublished cases from this circuit to satisfy the weight of authority approach.

To support this approach, Ms. Surat relies on five cases from other circuits and three of our unpublished cases: (1) *Shannon v. Koehler*, 616 F.3d 855 (8th Cir. 2010); (2) *Blankenhorn v. City of Orange*, 485 F.3d 463 (9th Cir. 2007); (3) *Smith v. City of Troy, Ohio*, 874 F.3d 938 (6th Cir. 2017) (per curiam); (4) *Patel v. City of Madison*, 959 F.3d 1330 (11th Cir. 2020); (5) *Sconiers v. Lockhart*, 946 F.3d 1256 (11th Cir. 2020); (6) *Long v. Fulmer*, 545 F. App'x 757 (10th Cir. 2013) (unpublished); (7) *Cook v. Peters*, 604 F. App'x 663 (10th Cir. 2015) (unpublished); and (8) *Roe v. City of Cushing*, 1993 WL 482968 (10th Cir. Nov. 24, 1993) (unpublished table order). Because the factual scenarios present in the five out-of-circuit cases are sufficiently distinguishable, they fail

24

to provide the weight of authority necessary to clearly establish Officer Klamser's conduct violated the Fourth Amendment. Moreover, the unpublished cases from this circuit cannot satisfy the weight of authority approach for demonstrating the law is clearly established.

In *Shannon*, when the officers responded to an altercation at a bar, the plaintiff "strongly state[d] to [one of the officers], using profanity, that he own[ed] the bar, d[id] not need [the officer], and order[ed] [the officer] to get out of the bar." 616 F.3d at 858. The officer alleged the plaintiff "poke[d] him," twice in the chest. *Id.* The officer then "perform[ed] a takedown, which cause[d] [the plaintiff] to hit a bar stool and land on the hardwood floor." *Id.* Taking the facts in the light most favorable to the plaintiff, the Eighth Circuit concluded, "it was not reasonable for [the officer] to use more than de minimis force against [the plaintiff]" where "he was not suspected of committing a serious crime," "did not attempt to flee or actively resist arrest," and "posed little or no threat to [the officer] or others." *Id.* at 862–63. Importantly, the Eighth Circuit concluded a jury could find the plaintiff in *Shannon* did not resist arrest. Here, Ms. Surat was convicted for resisting arrest, making this case easily distinguishable.

In *Blankenhorn*, police officers saw the plaintiff at a shopping mall and believed he had been previously barred from the location based on prior interactions. 485 F.3d at 467. Based on a suspicion that the plaintiff was trespassing, the officer ordered the plaintiff to kneel for an arrest. *Id.* at 469. The plaintiff refused to kneel and several officers then immediately "gang-tackl[ed] him, punch[ed] him, and us[ed] hobble restraints" to arrest him. *Id.* at 467. *Blankenhorn* is not comparable to the present facts

25

both because the level of force employed by the officers there was significantly more extensive than Officer Klamser's takedown of Ms. Surat and because the *Blankenhorn* plaintiff's only resistance was the refusal to kneel when asked. *See id.* at 469.

In *Smith*, the plaintiff began experiencing a seizure while driving. 874 F.3d at 942. A witness called the police to report suspicious activity. *Id.* When the officer arrived, the plaintiff was holding onto a chain-link fence, swaying back and forth with his pants around his knees and was yelling "[b]aby." *Id.* When the plaintiff did not respond to requests to identify himself and return to his car, the officer peeled the plaintiff's fingers from the fence. *Id.* In response, the plaintiff pulled his arm away from the officer, who immediately took the plaintiff to the ground with a leg sweep. *Id.* Another officer arrived as back up and tased the plaintiff when he did not comply with an order to put his hands behind his back. *Id.* The Sixth Circuit concluded "[i]t is well-established at the time of the incident in this case that a non-violent, non-resisting, or only passively resisting suspect who is not under arrest has a right to be free from an officer's use of force." *Id.* at 945. Here, Ms. Surat was under arrest, resisting arrest, and interfering with a police officer. Although she, like the *Smith* plaintiff, was taken to the ground, Ms. Surat was not tased. Thus, neither the level of resistance nor the amount of force present in that case is comparable to the factual scenario here.

To support the district court's finding that her right to be free from Officer Klamser's takedown in these circumstances is clearly established, Ms. Surat cited two additional out-of-circuit cases. In *Patel*, the Eleventh Circuit clarified "[w]e have repeatedly ruled that a police officer violates the Fourth Amendment, and is denied

qualified immunity, if he or she uses gratuitous and excessive force against a suspect who is under control, not resisting, and obeying commands." 959 F.3d at 1343 (quoting *Saunders v. Duke*, 766 F.3d 1262, 1265 (11th Cir. 2014)). Because Ms. Surat was resisting and not obeying commands, this proposition of law is unhelpful to her position. The next case offered by Ms. Surat, *Sconiers*, considers an Eighth Amendment excessive force claim involving sexual assault in a prison, 946 F.3d at 1260–61, and cannot create clearly established law in this Fourth Amendment excessive force case.

These out-of-circuit cases support the general principle "that force is least justified against nonviolent misdemeanants who do not flee or actively resist arrest." *Morris*, 672 F.3d at 1198. But even when considered cumulatively, they do not establish by the weight of authority that the constitutional right we have recognized here was clearly established at the time Officer Klamser initiated the takedown maneuver against Ms. Surat.

Next, Ms. Surat relies on a series of unpublished decisions from this circuit that she contends should have put Officer Klamser on notice that his conduct was unconstitutional. *See Long*, 545 F. App'x at 759–60 (affirming the denial of qualified immunity for an officer who separated the shoulder of a parent accused of misdemeanor theft from a children's hospital cafeteria where the parent did not pose any threat to the safety of the officer or others, and "only minimal[ly] resist[ed]" arrest); *Cook*, 604 F. App'x at 664 (affirming the denial of qualified immunity for a deputy sheriff who used a "forceful takedown" to arrest a teenager who had cursed at him while the deputy was working as a security guard); and *Roe*, 1993 WL 482968, at *3 (affirming the denial of

27

qualified immunity for an officer who used a takedown maneuver to arrest a teenager who was verbally combative with the officer where the plaintiff's crimes "were not severe, and there [was] little evidence that he posed an immediate threat to the safety of the officers[,]" and "[a]lthough he resisted the arrest . . . it [wa]s not clear that the force used was proportionate to the resistance offered"). Ms. Surat's argument fails, however, because we have repeatedly explained that clearly established law may not be based on our unpublished decisions. *Williams v. Hansen*, 5 F.4th 1129, 1132–33 (10th Cir. 2021) (citing *Green v. Post*, 574 F.3d 1294, 1305 n.10 (10th Cir. 2009) ("In determining whether the law was clearly established, we have held that we may not rely upon unpublished decisions."); *Mecham v. Frazier*, 500 F.3d 1200, 1206 (10th Cir. 2007) ("An unpublished opinion, . . . even if the facts were closer, provides little support for the notion that the law is clearly established. . . .")). Where "unpublished opinions are not even regarded as binding precedent in our circuit. . . [w]e could not allow liability to be imposed upon public officials based upon unpublished opinions that we ourselves have determined will be binding only upon the parties immediately before the court." *Green*, 574 F.3d at 1305 n.10 (quoting *Hogan v. Carter*, 85 F.3d 1113, 1118 (4th Cir. 1996)). Moreover, to establish that a right is clearly established under the "weight of authority" standard, a plaintiff must identify more than "a handful of decisions . . . that lend support to his claim." *Christensen v. Park City Mun. Corp.*, 554 F.3d 1271, 1278 (10th Cir. 2009). Beyond identifying a handful of unpublished cases from this circuit, Ms. Surat has failed to show the constitutional right asserted here was clearly established by the weight of authority at the time of the incident.

28

Finally, this is not one of the "rare obvious case[s]" where reliance on *Graham*

alone is sufficient under Supreme Court precedent. *Wesby*, 138 S. Ct. at 590. For

example, in *Davis v. Clifford*, 825 F.3d 1131 (10th Cir. 2016), this court relied on

*Graham* itself in light of the "disturbing" "degree of force allegedly used by police

officers in th[at] case." *Id.* at 1136. There, an officer suspected the plaintiff of driving

with a suspended license. *Id.* at 1133–34. The officer called for backup and multiple

officers confronted the plaintiff by banging on her car with batons. *Id.* at 1134. The

plaintiff locked the car doors, rolled the windows up, and did not exit the vehicle. *Id.* The

officers ordered her to step out of the car and she responded that she would exit the

vehicle "if the officers promised not to hurt her." *Id.* The officers responded by breaking

the window of her car, pulling the plaintiff out by her hair, and forcing her face-down on

the glass-shattered pavement to handcuff her. *Id.* This court concluded that at the time of

the plaintiff's arrest, it was "clearly established law that the use of disproportionate force

to arrest an individual who has not committed a serious crime and who poses no threat to

herself or other constitutes excessive force." *Id.* at 1137. Ms. Surat was not faced with

multiple officers violently breaking into her vehicle and dragging her through broken

glass for a suspected traffic offense. Although we hold that Officer Klamser exceeded the

level of force necessary to respond to Ms. Surat's resistance to arrest, this is not one of

the "rare and obvious cases" where the degree of force rises to a level justifying reliance

on *Graham* itself to clearly establish the law. *Id.* at 1137.

None of the precedent identified by Ms. Surat would have made it clear to every

reasonable officer that throwing Ms. Surat to the ground in response to her minimal

resistance would violate the Fourth Amendment. As a result, Officer Klamser is entitled to qualified immunity.

### III.    CONCLUSION

For the foregoing reasons, we DENY Ms. Surat's motion to dismiss the appeal. We exercise jurisdiction over Officer Klamser's challenges to abstract issues of law and conclude that although the district court correctly determined Officer Klamser violated Ms. Surat's constitutional right to be free from excessive force, it erred in denying him qualified immunity because that right was not clearly established at the time of the incident. Accordingly, we REVERSE the district court's denial of Officer Klamser's motion for summary judgment.