FILED
United States Court of Appeals
Tenth Circuit

February 10, 2023

Christopher M. Wolpert
Clerk of Court

## UNITED STATES COURT OF APPEALS

## FOR THE TENTH CIRCUIT

_____

WILLIAM MONTGOMERY,

    Plaintiff - Appellant,

v.

STEVEN GERDJIKIAN; ADAM
HUGHES; CHAD WARNER; SEAN
MITCHELL,

    Defendants - Appellees.

No. 22-1126
(D.C. No. 1:20-CV-03600-PAB-MEH)
(D. Colo.)

_____

## ORDER AND JUDGMENT[*]
_____

Before **PHILLIPS**, **McHUGH**, and **ROSSMAN**, Circuit Judges.
_____

William Montgomery brought this pro se civil rights action under 42 U.S.C.

§ 1983 against the defendants, who are police officers for the City of Aurora,

Colorado.  He alleged the defendants violated his constitutional rights by detaining

---

[*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal.  _See_ Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).  The case is therefore ordered submitted without oral argument.  This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel.  It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

him without reasonable suspicion or probable cause.  The district court dismissed the action based on qualified immunity.  We affirm.[1]

## BACKGROUND

Mr. Montgomery alleges the defendants improperly detained him so he could be issued a notice banning him for a year from a shopping mall.[2]  The magistrate judge summarized the facts of his amended complaint as follows:

> Plaintiff alleges that on December 7, 2018, he was standing on private property owned by the Town Center at Aurora Mall ("the Mall").  Plaintiff was holding a cardboard sign "signifying to patrons of the mall his generic need for support and assistance."  He contends alternatively either that Aurora Police contacted mall security to alert them to Plaintiff's

---

[1] Because Mr. Montgomery appears pro se in this appeal we construe his filings liberally but do not serve as his advocate.  *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).  Our "broad reading of [Mr. Montgomery's] complaint does not relieve [him] of the burden of alleging sufficient facts on which a recognized legal claim could be based."  *Id.*

[2] Mr. Montgomery's complaint alleges that officers Hughes, Warner, and Mitchell acted with Officer Gerdjikian in detaining him.  But the only specific alleged actions by these officers described in the complaint were that Mr. Montgomery was detained "in front of" them, R. at 70; that the officers joined in a discussion between Mr. Montgomery and Officer Gerdjikian "and its attendant detainment," *id.* at 73; and that the officers witnessed the encounter and "had the opportunity to intervene and stop [Officer] Gerdjikian from further infringing on [Mr. Montgomery's] rights," but failed to do so, *id.* at 84.  In district court, the defendants argued that officers Hughes, Warner, and Mitchell should be dismissed for lack of personal participation.  The magistrate judge concluded this argument was moot because Mr. Montgomery had failed to adequately allege the violation of a constitutional right.  On review, the district court noted Mr. Montgomery's failure to object to the recommendation that these three defendants be dismissed, and it reviewed the recommended dismissal of these officers under a clear error standard.  We need not determine whether Mr. Montgomery should have specifically objected to their dismissal to preserve an issue concerning these officers.  Mr. Montgomery's claims against the other officers fail for the same reasons as his claims against Officer Gerdjikian.

presence, or that mall security contacted Aurora Police to request assistance regarding Plaintiff.

At approximately 4:32 p.m., several mall security guards approached Plaintiff and engaged him in conversation, informing him that the Mall considered him in violation of their no-solicitation policy, and was issuing him a one-year ban from entering or remaining on the property. This was Plaintiff's first contact with mall security. Plaintiff describes this encounter as congenial. He alleges that [he] did not refuse to leave the property, but he did object to the ban. He hoped to return to the property as a customer in the future.

A few minutes into the conversation, Defendant Gerdjikian, an Aurora Police Officer, arrived, followed a few minutes later by Defendants Hughes, Warner, and Mitchell, fellow Aurora Police Officers. Defendant Gerdjikian engaged Plaintiff in conversation, but his fellow Defendants did not. They remained nearby and observed the encounter. Defendant Gerdjikian asked for Plaintiff's name and identification, which he refused to provide. Plaintiff indicated to Defendants that he did not object to leaving the property or not soliciting there, but that he wanted to be able to return to shop at the Mall. Plaintiff alleges that during the conversation, Defendant Gerdjikian spoke into his radio, positively identifying Plaintiff by name and reputation, even though Plaintiff had not identified himself.

During the encounter, Plaintiff attempted to leave the property and exit the conversation, but he was stopped by Defendant Gerdjikian, who told him that he was not free to leave until he was issued a written ban notice from mall security. At this point, Plaintiff's transcript of the encounter includes several requests by Plaintiff to "Let go of me!" This suggests that Defendant Gerdjikian grabbed or restrained Plaintiff to prevent him from leaving, but Plaintiff does not specifically allege in his amended complaint that physical restraint occurred. However, Plaintiff does state in his Response that he was "physically grabbed by [Defendant Gerdjikian] about six minutes into the encounter." In light of that statement, the Court accepts for present purposes that Defendant Gerdjikian used some degree of physical contact to detain Plaintiff. Plaintiff objected to his detention and asked for an explanation of Defendant Gerdjikian's justification. Defendant Gerdjikian answered that mall security had requested assistance in removing Plaintiff from the property. Defendant Gerdjikian never indicated that mall security had specifically informed him that Plaintiff was trespassing or that he had refused to leave.

From the time that Defendant Gerdjikian prevented Plaintiff from leaving, sixteen minutes elapsed before he was released and was issued his

written ban notice.  During the detention, Defendants apparently identified Plaintiff through other means.  Plaintiff was on public property when he was released, although it is unclear at what point he moved from the Mall's property to public property.

R. at 136-37 (citations omitted).

The defendants moved to dismiss the complaint based on qualified immunity. The magistrate judge recommended granting the motion to dismiss because the complaint did not allege the violation of a constitutional right, and because even if there was a constitutional violation the defendants did not violate clearly established law.  Mr. Montgomery objected to this recommendation, reasoning (1) he had already left private property when he was detained, therefore the defendants did not have a reasonable suspicion to detain him for trespassing; and (2) it is clearly established that law enforcement officers lack the authority to detain people to issue them notices banning them from private property.  The district court overruled his objections; accepted the recommendation; concluded that the officers were entitled to qualified immunity on the second, clearly established prong; and dismissed the case with prejudice.

## DISCUSSION

"We review Rule 12(b)(6) dismissals and qualified-immunity rulings de novo."  *Frey v. Town of Jackson*, 41 F.4th 1223, 1232 (10th Cir. 2022).

When a defendant raises qualified immunity in his motion to dismiss, we engage in a two-part analysis.  We must decide (1) whether the plaintiff plausibly alleged a violation of a constitutional right, and (2) if so, whether that right was clearly established at the time of the alleged violation.  We may address either prong first to achieve the fair and efficient disposition of each case.

4

*Id.* (citations and internal quotation marks omitted).

We need not determine whether the complaint plausibly alleges the violation of a constitutional right, because Mr. Montgomery fails to show that the officers' actions violated clearly established law. "To demonstrate that a right is clearly established, a plaintiff must identify an on-point Supreme Court or published Tenth Circuit decision, or show that the clearly established weight of authority from other courts has found the law to be as the plaintiff maintains." *Bledsoe v. Carreno*, 53 F.4th 589, 607 (10th Cir. 2022) (internal quotation marks omitted). "While the Supreme Court has repeatedly told courts not to define clearly established law at a high level of generality, it has also explained that officials can still be on notice that their conduct violates established law even in novel factual circumstances." *Surat v. Klamser*, 52 F.4th 1261, 1276 (10th Cir. 2022) (internal quotation marks omitted). But even so, "the clearly established law must be particularized to the facts of the case" and cannot simply invoke an "extremely abstract right[]." *Id.* (internal quotation marks omitted).

Qualified immunity ensures that "before they are subjected to suit, officers are on notice their conduct is unlawful." *Bledsoe*, 53 F.4th at 607 (internal quotation marks omitted). Thus, "existing law must have placed the constitutionality of the officer's conduct beyond debate." *Surat*, 52 F.4th at 1276 (internal quotation marks omitted). "This demanding standard protects all but the plainly incompetent or those who knowingly violate the law." *Id.* (internal quotation marks omitted).

5

The issue we must resolve is whether it was clearly established on December 7, 2018, that detaining an individual for approximately 16 minutes to issue him a trespass warning would violate his constitutional rights. To show that this law was clearly established at the time of his detention, Mr. Montgomery cites several Florida court decisions that have concluded the issuance of a trespass warning under a Florida statute—which is similar to the Aurora, Colorado municipal trespassing ordinance applicable to this case—does not justify an investigative detention.[3] Instead, a stop for issuance of the warning is considered "a consensual encounter," because until the warning has been given and disobeyed, no trespass has yet occurred. *See, e.g.*, *Moore v. State*, 200 So. 3d 1290, 1292 (Fla. Dist. Ct. App. 2016). It follows that "the officer may issue a verbal warning, or he may issue a written warning if the individual voluntarily decides to remain in order to receive a written warning." *Id.* But, according to these courts, the officer may not detain an individual merely to permit the officer (or the owner of the premises) to issue a written warning. Mr. Montgomery also cites an unpublished Nevada federal district court case holding

---

[3] The Aurora, Colorado trespass ordinance at issue here provides as follows:

> A person commits trespass if that person . . . [e]nters upon or refuses to leave any private property of another, when immediately prior to such entry or refusal to leave oral or written notice is given by the owner, a police officer or firefighter acting in the course of his or her employment or person responsible for the care of the property that such entry or continued presence is prohibited.

R. at 179-80 (quoting Aurora Mun. Code § 94-71(a)(2)).

that extending a detention to permit a private party to read an individual a trespass warning violated that individual's clearly established constitutional rights. *McCall v. Las Vegas Metro. Police Dep't*, No. 2:18-cv-01319-APG-EJY, 2020 WL 1433579 (D. Nev. Mar. 23, 2020), *aff'd*, 2021 WL 3667720 (9th Cir. Aug. 18, 2021).

These cases fall short of clearly establishing the law.  They are not on-point Supreme Court or published Tenth Circuit decisions, nor do they demonstrate that the clearly established weight of authority is as Mr. Montgomery claims.  *See Bledsoe*, 53 F.4th at 607.[4]

Mr. Montgomery argues *McCall* should persuade us because it applied a Supreme Court case, *Florida v. Royer*, 460 U.S. 491 (1983), "to clearly establish the premise that detaining a suspect for the sole purpose of issuing them a private property banning notice violates the Fourth Amendment."  Aplt. Opening Br. at 7 (internal quotation marks omitted).  He contends we should follow the *McCall* court's lead and deny qualified immunity based on *Royer*.

If *Royer* itself put the defendants sufficiently on notice that their conduct was unconstitutional, it could qualify as clearly established law.  But the facts and holding in *Royer* are significantly different from those of this case.  *Royer* involved a custodial interrogation and search, without probable cause or consent, that clearly

---

[4] In addition, *McCall* itself could not have clearly established the law at the time of Mr. Montgomery's detention, because *McCall* was not issued until approximately fifteen months after the defendants allegedly detained him.

exceeded the limits of an investigative detention. 460 U.S. at 494-95, 501. No such circumstances are present here.

Finally, Mr. Montgomery argues that it is "obvious the conduct at issue violates the U.S. Constitution," so prior case law directly on point is not required. Aplt. Opening Br. at 3. But we cannot conclude that the defendants' conduct was so egregious that the general, clearly established precedent requiring reasonable suspicion applied with "obvious clarity" to the facts of this case. *Hope v. Pelzer*, 536 U.S. 730, 741 (2002). Several particularized facts blur the illegality of their conduct under those general principles. First, the Aurora ordinance expressly authorizes officers to issue verbal or written trespass warnings. Second, the ordinance indicates no preference for the type of warning (verbal or written) the officer may provide. Third, the officer's issuance of a warning serves a law enforcement purpose because it may actually prevent a crime from occurring if the person who is warned heeds the warning and avoids trespassing on private property. Fourth, the issuance of a written warning would serve to formalize the Mall employees' verbal indications to Mr. Montgomery that he was going to be banned from the premises, which he had debated with those employees. The written warning would therefore clarify the legal situation of the parties in a situation where the officers might have been imminently called on to enforce the law. Finally, the approximately 16-minute detention was not unreasonably extended, given the need to prepare and issue the written warning. Under these circumstances, we cannot say that even without prior case law on point to clearly establish the law, "existing law

8

[had] placed the constitutionality of the officer's conduct beyond debate." *Surat*, 52 F.4th at 1276 (internal quotation marks omitted).

## CONCLUSION

We affirm the district court's judgment of dismissal.

Entered for the Court

Carolyn B. McHugh
Circuit Judge