FILED
United States Court of Appeals
Tenth Circuit

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

April 15, 2026

Christopher M. Wolpert
Clerk of Court

_____

GRATTON CURTIS ODELL,

    Plaintiff - Appellant,

v.

FORD COUNTY SHERIFF'S
DEPARTMENT; BRYAN STAMMER;
MATTHEW BOLMER; STEPHEN M.
LIGON,

    Defendants - Appellees.

No. 25-3104
(D.C. No. 5:25-CV-03008-JWL)
(D. Kan.)

_____

ORDER AND JUDGMENT[*]
_____

Before **BACHARACH**, **McHUGH**, and **ROSSMAN**, Circuit Judges.
_____

Gratton Curtis Odell, a Kansas prisoner proceeding pro se, brought this civil rights action against the Ford County (Kansas) Sheriff's Department and three of its deputies. Mr. Odell accuses the deputies of using excessive force when they arrested him. The district court dismissed his complaint at the screening phase. We have jurisdiction under 28 U.S.C. § 1291, and we reverse.

_____

[*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

## I.    BACKGROUND & PROCEDURAL HISTORY

Mr. Odell filed his pro se complaint on January 14, 2025.  He alleged that, on January 28, 2023, he was walking to work when a Ford County sheriff's deputy stopped him based on a domestic violence complaint made by his girlfriend earlier that morning.  Soon, four more deputies arrived and began questioning him. Mr. Odell eventually explained that he had shoved his girlfriend and broken her phone.  The deputies then told him he was under arrest.  Mr. Odell countered they should talk to his girlfriend again, prompting the deputies to "man handle" him and take him to the ground.  R. at 12.  And three of them—defendants Bryan Stammer, Matthew Bolmer, and Stephen Ligons—began using their tasers on Mr. Odell. Collectively, he alleged, they tased him twenty-three times.

Mr. Odell further alleged the deputies took him to jail, where he showed his taser burns to a fellow inmate.  He then bonded out of jail and went to the hospital. Hospital employees counted forty-eight taser burns and told him they would be willing to testify on his behalf.  Mr. Odell, however, counted only forty-six closely spaced burns—which is apparently how he concluded he had been tased twenty-three times, *i.e.*, each closely spaced pair of burns representing one taser strike.  He took pictures of these burns.

Mr. Odell asserted the number of taser strikes he received amounted to excessive force.  This was especially so, he argued, considering there were five deputies on the scene.  He therefore invoked 42 U.S.C. § 1983 and requested compensatory damages.

2

Because Mr. Odell is a prisoner and his complaint asks for compensation from governmental employees, the district court screened the complaint. *See* 28 U.S.C. § 1915A(a) ("The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity."). The district court noted that online Kansas court records showed Mr. Odell had pleaded no contest to "interference with law enforcement by obstructing/resisting/opposing felony warrant service or execution" and "battery on a law enforcement officer - no bodily harm." R. at 22. The court therefore raised the possibility that Mr. Odell's excessive force claim might be barred by *Heck v. Humphrey*, 512 U.S. 477 (1994). *Heck* held that

> when a state prisoner seeks damages in a § 1983 suit, the
> district court must consider whether a judgment in favor of
> the plaintiff would necessarily imply the invalidity of his
> conviction or sentence; if it would, the complaint must be
> dismissed unless the plaintiff can demonstrate that the
> conviction or sentence has already been invalidated.

*Id.* at 487. But the district court could not tell, based on Mr. Odell's allegations, whether *Heck* would apply to this situation. The district court therefore ordered the Ford County Sheriff's Department to produce a *Martinez* report.

A *Martinez* report is a procedure we first approved in *Martinez v. Aaron*, 570 F.2d 317, 319 (10th Cir. 1978). As explained in later cases, the procedure allows the district court to "direct prison officials to respond in writing to the [prisoner's] various allegations, supporting their response by affidavits and copies of internal

3

disciplinary rules and reports.  The purpose of the *Martinez* report is to ascertain whether there is a factual as well as a legal basis for the prisoner's claims." *Gee v. Estes*, 829 F.2d 1005, 1007 (10th Cir. 1987).

The Sheriff's Department produced a *Martinez* report, as ordered.  The report included bodycam footage from Deputies Stammer and Bolmer (two of the defendants here) and from non-defendant Deputy Luis Marquez, who was also present when Mr. Odell was arrested.  The various videos show a roadside discussion between Mr. Odell and the deputies about the girlfriend's accusations, followed by Deputy Marquez moving in, reaching for one of Mr. Odell's wrists, and instructing him to put his hands behind his back.  Then, an approximately 90-second struggle ensues between Mr. Odell and all the deputies.  Mr. Odell tries to keep his hands in front of him (before he was taken to the ground) or under him (after he was taken to the ground) to prevent the officers from pulling his hands behind his back and cuffing them.

During the portion of the struggle where Mr. Odell is still standing, a deputy tells the others to take Mr. Odell to the ground and another officer—the *Martinez* report says it is Deputy Bolmer—warns Mr. Odell that he will get tased.  Shortly after there is one taser deployment to the back of Mr. Odell's right leg, also attributed to Deputy Bolmer but described as a failed strike because Mr. Odell moved his leg away too quickly.  After Mr. Odell is on the ground but still struggling against the officers' arrest efforts, Deputy Bolmer's bodycam shows him applying one successful strike to the back of Mr. Odell's right leg and four successful strikes to the back of

4

Mr. Odell's left leg. Each strike lasts between one and two seconds. Roughly twenty seconds after the final strike, the deputies manage to cuff both hands behind Mr. Odell's back.

Based on the footage and Deputy Bolmer's incident report, the *Martinez* report claimed that only Deputy Bolmer used his taser six times (one unsuccessful strike and five successful strikes). The *Martinez* report further detailed the charges later brought against Mr. Odell and the ones to which he pleaded no contest. The charges to which he pleaded no contest included interference with a felony arrest (*i.e.*, resisting arrest in a case involving a felony—alleged aggravated battery of his girlfriend) and battery of a law enforcement officer (referring to a single kick that struck Deputy Ligons during the struggle). The report asserted the deputies' use of force had been reasonable.

The district court reviewed the *Martinez* report and ordered Mr. Odell to respond. The district court explained the *Martinez* report raised two potentially fatal problems for Mr. Odell's complaint. First, in the district court's view, the bodycam footage blatantly contradicted Mr. Odell's claim that he had been tased by the defendants twenty-three times; he was tased by Deputy Bolmer (and no one else) only a few times, and only when he was actively resisting arrest. Second, the district court reasoned *Heck* barred Mr. Odell's excessive force claim because success on that claim would necessarily implicate his convictions for resisting arrest and battery of a law enforcement officer.

5

Mr. Odell viewed the bodycam footage before responding. In his response, he noted Deputy Bolmer's bodycam footage does not start until just before the five taser strikes while he (Mr. Odell) was on the ground. From Deputy Stammer's bodycam video, he counted twenty-seven times that the officers said, "give me your hands" and two times in which they said "stop resisting." He believed a taser strike accompanied most of these orders. He also stated, "I have pictures I would like to submit to this case. Is there an e-mail address or address I can mail my pictures to?" R. at 161. He also repeated that a fellow jail inmate and hospital employees saw his burns.

A few weeks later, Mr. Odell submitted what appears to be a supplemental response (there is no docket activity between his original response and the second document). Mr. Odell stated that he had someone e-mail his photos to the attorneys listed on the *Martinez* report with a request that they e-file them with the court. He again requested a court e-mail if one was available. And he concluded by stating, "I know I was tased 23 times[,] maybe only 7 or so by[] [Deputy] Bolmer but the officer in front of him was tasing me to[o][,] you just can't see it. And the other officer was the one saying give me your hands every time he tased me." R. at 162.

About a week after the supplemental response, Mr. Odell sent a third document to the district court asking if the attorneys listed on the *Martinez* report had submitted his photos. "Since the defendant[s] got to submit [their evidence] in the Martinez Report," he stated, "I feel it's only fair I get to present mine." R. at 163. He also asked to submit his file from the hospital.

6

The district court responded to Mr. Odell's third filing with an order stating, "If information that could be contained in the medical records and/or pictures Plaintiff seeks to file is relevant to the disposition of this matter, the Court will instruct Plaintiff on how to accomplish filing them and will grant him time in which to do so."  R. at 164.

Soon after, the district court entered an order dismissing Mr. Odell's complaint.  The reasons were essentially the same as those described in the order giving Mr. Odell an opportunity to respond to the *Martinez* report: (1) the video evidence blatantly contradicted Mr. Odell's claim of being tased twenty-three times; and, regardless, (2) a verdict in his favor would violate *Heck* because such a verdict would undermine his conviction for resisting arrest and battery of a law enforcement officer.

## II.    ANALYSIS

We review de novo a district court's § 1915A screening dismissal.  *See McBride v. Deer*, 240 F.3d 1287, 1289 (10th Cir. 2001).

### A.    The Video Evidence

This case raises questions about the proper use of *Martinez* reports when they include video evidence, especially in light of our statement that "the district court may not look to the *Martinez* report, or any other pleading outside the complaint itself, to refute facts specifically pled by a plaintiff, or to resolve factual disputes," *Swoboda v. Dubach*, 992 F.2d 286, 290 (10th Cir. 1993).  We will assume for present purposes, however, that a district court at the screening phase may nonetheless

7

consult video evidence submitted with a *Martinez* report to determine whether it blatantly contradicts the plaintiff's allegations.

The "blatantly contradicted" standard comes from *Scott v. Harris*, 550 U.S. 372, 380 (2007). There, in the context of a summary judgment dispute, the Supreme Court held, "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Id.* The Court also held video evidence in the record "so utterly discredited [the plaintiff's version of events] that no reasonable jury could have believed him." *Id.* Thus, "[t]he Court of Appeals [which had adopted the plaintiff's version of events] should not have relied on such visible fiction; it should have viewed the facts in the light depicted by the videotape." *Id.* at 380–81.

Mr. Odell's description of what happened to him is not rendered "visible fiction" by the bodycam footage submitted with the *Martinez* report. Most of the relevant footage is from very close range. None of the three angles is consistently far enough away from the struggle to see what every other officer is doing. The videos therefore do not rule out the possibility that Mr. Odell received more taser strikes than those from Deputy Bolmer. Thus, the district court incorrectly concluded that the bodycam footage blatantly contradicted Mr. Odell's allegations.

Moreover, if the "blatantly contradicted" standard applies in the *Martinez* report context, it surely provides an opportunity for the plaintiff to submit countervailing objective evidence. *Cf. Teetz ex rel. Lofton v. Stepien*, 142 F.4th 705,

720 (10th Cir. 2025) ("[T]he blatant contradiction exception does not apply where documentary evidence could plausibly support two competing versions of events."). "This court has indicated that photographs are the kind of evidence that may satisfy the blatant-contradiction standard." *Vette v. K-9 Unit Deputy Sanders*, 989 F.3d 1154, 1165 (10th Cir. 2021) (internal quotation marks omitted). We have also entertained the possibility that third-party medical records may sometimes be considered in this context. *See Burke v. Pitts*, 157 F.4th 1326, 1335 (10th Cir. 2025) (noting the argument that an autopsy report might create a blatant contradiction but concluding the report in question was insufficiently supported), *petition for cert. filed*, (U.S. Mar. 6, 2026) (No. 25-1062).

Mr. Odell repeatedly asked for a way to submit photographs depicting numerous taser burns, as well as hospital records from the same day he was arrested. Before entering its dismissal order, the district court acknowledged these materials might be relevant. In the dismissal order, however, the court discounted their relevance because it concluded even twenty-three taser strikes could not state a claim for relief in light of *Heck*. We therefore turn to that issue.

### B.     The *Heck* Issue

The district court alternatively dismissed for failure to address *Heck*. As we explain, this is not an alternative basis to affirm in this case.

After receiving the *Martinez* report, the district court entered an order giving Mr. Odell an opportunity to respond. That order described the *Heck* bar and stated:

> Plaintiff pled no contest to felony interference with law enforcement based on his obstruction, resistance, or opposition to Deputy Marquez, who initially attempted to handcuff him. Plaintiff also pled no contest to misdemeanor battery on a law enforcement officer for kicking Defendant Ligon during the ensuing struggle. A finding that Defendant Bolmer's repeated but brief uses of the taser in drive stun mode during that struggle was unconstitutional would necessarily implicate the validity of Plaintiff's convictions of interference with law enforcement and misdemeanor battery on a law enforcement officer. Thus, Plaintiff's claim is subject to dismissal.

R. at 142.

Then, in its dismissal order, the district court relied on this as an alternative basis to dismiss the complaint. "[E]ven assuming that Plaintiff was in fact tased 23 times," the district court reasoned, "the sole count in this matter remains subject to dismissal" because

> the Court granted Plaintiff time in which to show good cause why his claims should not be dismissed under *Heck*. Although Plaintiff has responded to [that order], his responses—even liberally construed—do not address the *Heck* bar identified in the [order] as a basis for dismissal of his claims in this matter.

R. at 167, 168 (citation omitted). Continuing, the district court stated, "Plaintiff has provided no reason for this Court to reconsider its conclusion . . . that his claims in this matter are barred by *Heck*. Accordingly, Plaintiff's complaint must be dismissed because it fails to state a claim on which relief may be granted." R. at 169.

A district court's finding that a party waived an argument by failing to timely raise it is a "fact-intensive question" that this court reviews for abuse of discretion.

10

*O'Tool v. Genmar Holdings, Inc.*, 387 F.3d 1188, 1207 (10th Cir. 2004).  The district

court is correct that Mr. Odell's response said nothing about *Heck*.  The district

court's alternative holding nonetheless relied on a misreading of the record and was

therefore an abuse of discretion.

When the district court called for a response to the *Martinez* report, its *Heck*

analysis explicitly adopted the defendants' version of events, as supposedly

confirmed by the video evidence: "A finding that *Defendant Bolmer's repeated but*

*brief uses of the taser in drive stun mode during that struggle* was unconstitutional

would necessarily implicate the validity of Plaintiff's convictions . . . ."  R. at 142

(emphasis added).  Mr. Odell's failure to respond to *this* assertion is understandable

given his consistent focus on proving this is not what actually happened.  But the

district court's dismissal order changed the focus.  The district court faulted

Mr. Odell for failing to respond to the *Heck* issue "even assuming that [he] was in

fact tased 23 times."  R. at 167.  The district court never gave Mr. Odell notice that

he needed to address *Heck* even assuming his own version of events was correct.

If the district court meant to say that, even under Mr. Odell's version of events,

a finding in his favor would undermine his convictions, we do not believe the current

record can support such a conclusion.  A person convicted of resisting arrest may still

bring an excessive force claim under the theory that the force used to overcome his or

her resistance was excessive.  *See Surat v. Klamser*, 52 F.4th 1261, 1271–74 (10th

Cir. 2022) (concluding the facts in the light most favorable to the plaintiff could

support a finding that an officer used excessive force to overcome the plaintiff's

11

resistance, even though the plaintiff had been convicted of resisting arrest and the jury in that case had rejected the plaintiff's self-defense argument). And a person convicted of battery on a police officer may bring an excessive force claim arising out of that incident if, for example, "the officer used too much force to respond to the assault or . . . the officer used force after the need for force had disappeared." *Havens v. Johnson*, 783 F.3d 776, 782 (10th Cir. 2015). On the record as it presently exists, we cannot say as a matter of law that twenty-three taser strikes were appropriate to subdue Mr. Odell.

## III.  CONCLUSION

We reverse the district court's screening dismissal and remand for further proceedings consistent with this order and judgment. We grant Mr. Odell's motion to proceed on appeal without prepayment of costs or fees.

Entered for the Court

Veronica S. Rossman
Circuit Judge
